# No. 26-40211

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Jeffrey Todd Cooley,

Plaintiff - Appellant

v.

Union Pacific Railroad Company,

Defendant - Appellee

---

## On Appeal from
United States District Court for the Eastern District of Texas

4:25-CV-56

---

## BRIEF OF APPELLANT JEFFREY TODD COOLEY

---

SUBMITTED BY:

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Appellant,
Jeffrey Todd Cooley

Case: 26-40211    Document: 18    Page: 2    Date Filed: 06/22/2026

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellee: |
| --- | --- |
| Union Pacific Railroad Company | Jimmie Pinkham of Baird Holm, L.L.P. Omaha, NE<br>Scott P. Moore of Baird Holm, L.L.P. Omaha, NE |

| Appellant: | Counsel for Appellant: |
| --- | --- |
| Jeffrey Todd Cooley | Donald E. Uloth of Law Office of Donald E. Uloth Dallas, TX |

/s/ Donald E. Uloth
Attorney of record for Appellant

# STATEMENT REGARDING ORAL ARGUMENT

This is a simple matter, and oral argument is not likely to be helpful. Appellant is therefore not requesting oral argument. However, if the Court schedules this case for oral argument, Appellant requests that equal time be granted to each party.

# TABLE OF CONTENTS

<u>Contents</u>                                                                                      <u>Page(s)</u>

Certificate of Interested Persons…………………………………………… ii

Statement Regarding Oral Argument……………………………………… ii

Table of Contents……………………………………………………………... iii

Table of Authorities…………………………………………………………… v

Jurisdictional Statement……………………………………………………… 1

Statement of the Issues…………………………………………………….... 2

Statement of the Case…………………………………………………………. 2

    A.   Cooley passed three color-vision tests when hired, and then he worked safely for 10 years.………................................................... 2

    B.   Union Pacific modified its fitness-for-duty program ………………… 3

    C.   Union Pacific tested Cooley's color vision using a different kind of field test, and Cooley lost his job ………………………………... 3

    D.   The *Harris* class-action lawsuit…………………………………….. 5

    E.   Cooley filed an EEOC charge, and he later filed the present lawsuit…. 6

    F.   Union Pacific's 12(b)(6) motions to dismiss…………………………... 7

    G.   The district court granted the motion and dismissed the case…………. 7

Summary of the Argument…………………………………………………… 8

Standard of Review…………………………………………………………… 9

Argument……………………………………………………………………… 11

A.  Cooley's complaint alleged a viable basis for tolling………………… 11

B.  Cooley's tolling argument is not foreclosed by any allegations
in his complaint…………………………………………………….. 13

    1.  "Fitness-for-Duty Examination" is not a defined or
technical term……………………………………………. 14

    2.  "Fitness-for-Duty Examination" refers to all steps taken
to assess an employee's fitness for duty …………….................... 14

    3.  *DeFries* supports Cooley's interpretation of the term
"fitness-for-duty examination" …………….................................. 17

    4.  Cooley's fitness-for-duty examination continued
beyond September 18, 2014 …………....................................... 18

Conclusion……………………………………………………………. 19

Certificate of Service………………………………………………………. 20

Certificate of Compliance………………………………………………….. 20

iv

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page(s)</u>

American Pipe & Const. Co. v. Utah,
    415 U.S. 538 (1974)…………………………………………………… 11-12, 13

Am. Sustainable Bus. Council v. Hegar,
    No. 1:24-CV-01010-ADA,
    2026 U.S. Dist. LEXIS 22918 (W.D. Tex. Feb. 3, 2026)…………………..14

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)………………………………………………………… 9

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)……………………………………………………… 10

Chappell v. Goltsman,
    186 F.2d 215 (5th Cir. 1950)……………………………………………… 10

DeFries v. Union Pacific Railroad Co.,
    104 F.4th 1091 (9th Cir. 2024)…………………………………….. 11-12, 17

Goodman v. Praxair, Inc.,
    494 F.3d 458 (4th Cir. 2007)……………………………………… 9, 10

Grizzle v. Smith Unit Mailroom Staff,
    No. 5:24-CV-00187-H,
    2025 U.S. Dist. LEXIS 230384 (N.D. Tex. Nov. 25, 2025)………………15

Harris v. Union Pacific Railroad Company,
    329 F.R.D. 616 (D. Neb. Feb. 5, 2019)…………………………… *passim*

Harris v. Union Pacific Railroad Company,
    953 F.3d 1030 (8th Cir. 2020)………..…………………………… 5

v

Jaso v. Coca Cola Co.,
    435 Fed. Appx. 346 (5th Cir. 2011) ……………………..…… 9-10, 13

Palmer v. Union Pac. R.R. Co.,
    656 B.R. 789 (D. Neb. 2023) …………………………………… 5

Petrobras Am., Inc. v. Samsung Heavy Indus. Co.,
    9 F.4th 247 (5th Cir. 2021) ………………………………… 9

Ramirez v. City of San Antonio,
    312 F.3d 178 (5th Cir. 2002)………………………………….12

Springboards to Education, Inc. v. Demco, Inc.,
    No. 3:16-CV-2398-D, 2017 U.S. Dist. LEXIS 199283
    (N.D. Tex. Dec. 5, 2017)…………………….……………….... 10

Turner v. BNSF Ry. Co.,
    138 F.4th 224 (5th Cir. 2025)……………………………….. 16

White v. U.S. Corr., L.L.C.,
    996 F.3d 302 (5th Cir. 2021)…………………………………… 9

Zaragoza v. Union Pacific Railroad Co.,
    112 F.4th 313 (5th Cir. 2024)……………………………….. 12

Rules and Statutes

Fed. R. Civ. P. 12(b)(6)………………………………………... 8, 9, 10

28 U.S.C. § 1291……….………………………………………... 1

28 U.S.C. § 1331……….………………………………………... 1

42 U.S.C. § 12101……….………………………………………… 1

<u>Miscellaneous</u>

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation
of Legal Texts (2012) …………………………………………………14

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of a district court in a civil case in which plaintiff asserted claims based on the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*  The district court had original jurisdiction over the federal law claims under 28 U.S.C. § 1331.

Because the district court entered a final order, this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

This appeal is timely because of the following events. On November 3, 2025, the district court granted Union Pacific's 12(b)(6) motion to dismiss. ROA.531-543. On November 28, 2025, Cooley filed a motion for reconsideration. ROA.544-548. On April 13, 2026, Cooley filed a notice of appeal. ROA.557. On April 27, 2026, the district court entered an order denying the motion for reconsideration. ROA.558-565.

This is an appeal from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.      Whether the Third Amended Complaint alleges facts that foreclose the possible application of *American Pipe* tolling to Plaintiff's claims.

2.      Whether Cooley was unambiguously excluded from the *Harris* class of plaintiffs in 2019 when the district court adopted a revised definition of the class.

## STATEMENT OF THE CASE

This is a disabilities discrimination case against the Plaintiff-Appellant's former employer, Union Pacific Railroad Company. ROA.230-272 (Third Amended Complaint). The complaint alleged the following.

**A.      Cooley passed three color-vision tests when hired, and then he worked safely for 10 years.**

In February 2004, Union Pacific hired Cooley as a brakeman. ROA.232, ¶ 8.

As part of the hiring process, Union Pacific tested Cooley's color vision using an Ishihara color-vision test. Cooley did not pass, so he made his own arrangements to take a Farnsworth color-vision test. Cooley passed this test with a perfect score, and he provided the test results to Union Pacific. ROA.232, ¶ 9.

Union Pacific then had Cooley take a third type of color-vision test, which he passed, and he was allowed to begin work. ROA.232, ¶ 10.

2

Cooley later became a conductor. For close to ten years, he worked ably and safely, in and around trains, as a thru freight conductor. ROA.232, ¶ 11.

Thereafter, Union Pacific tested Cooley's color vision every two to three years. Each time, Union Pacific had Cooley take the Ishihara test, and he always failed this test. Union Pacific would then administer its own color-vision field test using the train signals he encountered on the job. Each time he took this test, he passed, and Union Pacific recertified him to continue working as a conductor. ROA.232, ¶ 12.

**B.      Union Pacific modified its fitness-for-duty program.**

In 2014, Union Pacific implemented new Medical Rules outlining its Fitness-for-Duty program and the fitness-for-duty evaluations of employees. ROA.233, ¶ 14. The Rules state that the company's Health and Medical Services department is responsible for these evaluations and has "the final authority for determining an employee's Fitness-for-Duty designation." ROA.243.

**C.      Union Pacific tested Cooley's color vision using a different kind of field test, and Cooley lost his job.**

On August 28, 2014, as part of his Federal Railroad Administration (FRA) certification as a conductor, Union Pacific arranged for Cooley to take the Ishihara color vision test, which he failed. ROA.233, ¶ 17.

On or about September 5, 2014, Union Pacific required Cooley to take the color-vision field test. This time, however, Cooley was sent to a different location

3

than before for a different kind of field test, using a signal unlike the ones Cooley encountered on the job. ROA.233-234, ¶¶ 18-19. Union Pacific claims that Cooley failed this test. ROA.234, ¶ 23.

On September 8, 2014, Union Pacific had Cooley sign a Temporary Productive Work (TPW) Plan. ROA.235, ¶ 27. Starting retroactively as of September 5, 2014 and ending September 19, 2014, Cooley was placed under a temporary two-week work restriction that stated: "Work in [a] position requiring accurate color signal recognition is prohibited." ROA.254-255. Beginning September 8, 2014, instead of working as a conductor, Cooley temporarily performed light duty tasks. Cooley reasonably believed that he would soon resume his duties as a conductor. ROA.235, ¶ 27.

On or about October 1, 2014, Cooley received letters and other documents from Union Pacific in the mail. ROA.235, ¶ 28. This included a letter dated September 29, 2014 that stated, as of September 25, 2014, Cooley was permanently restricted Cooley from work involving "accurate identification of colored train signals." The letter also said that this restriction could not be accommodated, so Cooley could no longer work as a conductor. ROA.257. Cooley lost his job and he was no longer being paid. ROA.233-237, ¶¶ 32, 34.

4

**D.    The *Harris* class-action lawsuit.**

Paragraphs 38-41 of the complaint describe the *Harris* class-action lawsuit against Union Pacific. ROA.237-238. *Harris* began as a multiple-plaintiff case, but on February 19, 2016, the plaintiffs filed an amended complaint asserting a class-action lawsuit against Union Pacific. The amended complaint alleged that Union Pacific's fitness-for-duty policies systematically discriminated against employees with disabilities. *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). The amended complaint proposed a class defined as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Harris*, Case No. 16-381, ECF No. 20 at 17, ¶ 116. The operative date of "300 days before" was September 18, 2014. *Palmer v. Union Pac. R.R. Co.*, 656 B.R. 789, 795 (D. Neb. 2023), *reconsideration denied*, 2024 WL 37225 (D. Neb. Jan. 3, 2024).

The *Harris* plaintiffs later moved for class certification, and by order dated February 5, 2019, the district court certified a class using a slightly different definition, which was:

> All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

*Harris,* 329 F.R.D. at 628. This narrowed the class by requiring a specific action (a fitness-for-duty examination as a result of a reportable health event) in place of being removed from service over their objection, or suffering any adverse action for reasons related to a Fitness-for-Duty Evaluation. The record in this case sheds no light on a possible reason for substituting the word *examination* for *evaluation*.

Union Pacific appealed, and on March 4, 2020, the Eighth Circuit reversed the certification decision. *Harris*, 953 F.3d at 1039.

**E.     Cooley filed an EEOC charge, and he later filed the present lawsuit.**

On March 30, 2020,[1] Cooley dual-filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission, Civil Rights Division. ROA.238, ¶ 43; ROA.263-265.

On September 4, 2024, the EEOC issued a determination finding reasonable cause to believe Union Pacific discriminated against Cooley based on disability, in violation of the ADA. ROA.238, ¶ 44; ROA.266-267.

On October 22, 2024, the EEOC issued a Conciliation Failure and Notice of Rights, triggering a 90-day deadline for filing a lawsuit in federal court. ROA.238,

---

[1] This paragraph of the Third Amended Complaint has a typographical error -- it says the charge was filed in 2024, but it was filed in 2020. In its motion to dismiss, Union Pacific acknowledges that it received notice of the charge on March 31, 2020.

¶ 45; ROA.268-272. On January 20, 2025 (the 90th day) Cooley filed this lawsuit. ROA.8-29 (the Complaint).

**F.      Union Pacific's 12(b)(6) motions to dismiss.**

Without filing an answer, Union Pacific filed a motion to dismiss the complaint. ROA.42-54.  Plaintiff then amended his complaint, ROA.71-112, and the district court denied the motion to dismiss as moot. ROA.113.

On March 18, 2025, Union Pacific filed a motion to dismiss the amended complaint. ROA.124-138. Plaintiff filed his response on April 1, 2025, ROA.141-193, and Union Pacific replied on April 7, 2025. ROA.194-200.

On July 24, 2025, the Court conducted a telephone conference with the attorneys for both parties. Plaintiff wanted to amend his complaint, and Defendant was not opposed as long as the amendment did not moot its pending motion to dismiss. Based on this agreement between the parties, the Court issued a minute entry granting Plaintiff leave to file his Third Amended Complaint and confirming that the motion to dismiss remained pending. ROA.4 (docket entry for 07/24/25).

**G.      The district court granted the motion and dismissed the case.**

On November 3, 2025, the district court issued a Memorandum Opinion and Order granting the motion to dismiss and dismissing the case. ROA.531-543. This was a final judgment, disposing of all claims and issues.

7

On November 28, 2025, Plaintiff timely filed a motion for reconsideration. ROA.544-548. On April 13, 2026, long after the motion for reconsideration was fully-briefed, Plaintiff filed a Notice of Appeal. ROA.557.

On April 4, 2026, the district court issued a Memorandum Opinion and Order denying the motion for reconsideration. ROA.558-565.

## SUMMARY OF THE ARGUMENT

This case concerns the terms used to define a class of plaintiffs in an earlier class-action lawsuit against Union Pacific. Cooley's claims in this case are barred by limitations unless he was a member of the class as originally defined, and as defined in the revised class definition certified by the district court. However, if Cooley remained a member of the class at all times until the class was decertified on appeal, limitations was tolled, and his claims are timely.

Because Union Pacific raised limitations in a 12(b)(6) motion to dismiss, Cooley was entitled to have all reasonable inferences drawn in his favor, and his case should not have been dismissed unless it was clear that his tolling argument could not succeed.

Union Pacific disputes Cooley's tolling argument based on its interpretation of the term "fitness-for-duty examination," a term used in the revised definition of the *Harris* class. This was not a defined or technical term, so it should have been interpreted and applied based on the ordinary everyday meaning of these words.

The district court erred by applying a narrow interpretation of this term rather than construing all allegations of the complaint in Cooley's favor. Because the district court erred, this Court should reverse and remand.

## STANDARD OF REVIEW

This Court reviews an order granting a 12(b)(6) motion to dismiss de novo. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir. 2021). The Court must accept all well-pled facts in the complaint as true, and it must draw all reasonable inferences in favor of the plaintiff. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306-07 (5th Cir. 2021). If the complaint alleges facts which, if true, state a claim for relief that is plausible, the motion must be denied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff is not required to anticipate affirmative defenses and include matters relevant to them in his complaint before they are raised. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). Rather, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

It is therefore improper to dismiss a case pursuant to 12(b)(6) based on a statute of limitations defense unless it is clear from the complaint that the action is time barred *and* the complaint fails to raise a viable basis for tolling. *Jaso v. Coca*

9

*Cola Co.*, 435 Fed. Appx. 346, 351 (5th Cir. 2011). "[D]ismissal for failure to state a claim based on the statute of limitations defense should be granted only when 'the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint.'" *Id.* at 351-352 (5th Cir. 2011), quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). If there are questions of fact concerning the limitations defense, a motion to dismiss based on limitations must be denied. *Chappell v. Goltsman*, 186 F.2d 215, 218 (5th Cir. 1950) ("It is only on the basis of a showing that there is no genuine issue of fact as to the existence of the affirmative defense that the court is authorized to sustain the motion and dismiss the action on that ground.").

For example, in *Springboards to Education, Inc. v. Demco, Inc.*, No. 3:16-CV-2398-D, 2017 U.S. Dist. LEXIS 199283 (N.D. Tex. Dec. 5, 2017), a company sued two other companies for trademark infringement. *Id.* at *4. One defendant filed a 12(b)(6) motion to dismiss asserting, among other things, that plaintiff's claims were barred by limitations. *Id.* at *8. The district court reviewed the complaint and found it did not affirmatively show that all acts of infringement occurred outside of the applicable limitations period. *Id.* at *9-10. Because it was possible some acts of infringement were not time-barred, the court declined to dismiss the case based on limitations. *Id.*

10

## ARGUMENT

Cooley's Third Amended Complaint alleged a viable basis for tolling the statute of limitations, and nothing in the complaint forecloses the possibility of Cooley prevailing on this argument. It was therefore error for the lower court to grant the motion to dismiss.

**A.   Cooley's complaint alleged a viable basis for tolling.**

Cooley's Third Amended Complaint invokes *American Pipe* tolling. ROA.237-238. In *American Pipe & Const. Co. v. Utah,* 415 U.S. 538 (1974), the Court held: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *American Pipe* at 554.

Fifty years later, in a case filed by another former member of the *Harris* class action, the Ninth Circuit addressed this related issue: "when does the narrowing of a class definition end *American Pipe* tolling of the statute of limitations for members of a putative or certified plaintiff class?" *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1095 (9th Cir. 2024).

For policy reasons relating to class actions, the Court held that putative class members are not excluded by a revised class definition unless their exclusion is unambiguous. *Id.* at 1099. Any lesser standard would "undermine the balance contemplated by the Supreme Court" and require putative class members to hire lawyers, intervene in the class action, or file their own lawsuits. *Id.* Therefore, "to

end *American Pipe* tolling for a particular bystander plaintiff based on a revised class definition, a court must adopt a new definition that 'unambiguously' excludes that bystander plaintiff. Ambiguity in the scope of the class definition should be resolved in favor of continuing to extend *American Pipe* tolling to members of the putative or certified class." *Id.* at 1100.

Shortly thereafter, the Fifth Circuit adopted this same standard. *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 321-22 (5th Cir. 2024), quoting *DeFries*.

In his Third Amended Complaint, Cooley alleged he was a member of the *Harris* class as originally defined, and that he continued to be a member of the class under the revised definition. ROA.237, ¶¶ 39 and 40.

This means Cooley's claims were tolled from the moment his claims accrued in 2014 until March 4, 2020, when the class was decertified. Cooley then had 300 days in which to file a Charge of Discrimination with the EEOC. *See, e.g., Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1)). Cooley timely filed a charge of discrimination on March 30, 2020, less than 30 days into this 300-day period. ROA.238, ¶ 43; ROA.263-265. On October 22, 2024, the EEOC issued a Conciliation Failure and Notice of Rights, triggering a 90-day deadline for filing a lawsuit in federal court. ROA.238, ¶ 45; ROA.268-272. Cooley timely filed this lawsuit on the 90th day, January 20, 2025. ROA.8-29 (the Complaint).

Union Pacific's attempt to dismiss the case based on an unpled affirmative defense therefore fails unless the complaint alleges facts completely foreclosing the viability of *American Pipe* tolling. *Jaso* at 351-352. No such facts are alleged in the complaint.

**B.     Cooley's tolling argument is not foreclosed by any allegations in his complaint.**

Union Pacific's argument on this issue is based on its interpretation of the term "fitness-for-duty examination," which appears in the revised class definition in *Harris*. Union Pacific contends that a fitness-for-duty examination is a test, like the Ishihara and the color-vision field test ("CVFT"), and it cannot possibly include any other actions taken to assess an employee's fitness for duty. Based on this narrow interpretation of the term, Union Pacific argues that Cooley's fitness-for-duty examination ended on September 5, 2014 when he took the CVFT.

Cooley contends that Union Pacific took other actions that were also part of his fitness-for-duty examination, such as an examination of his work and safety records, and exploring reasonable accommodations. Based on the Medical Rules, the context in which the term was used, and the plain language of the revised class definition, the term "fitness-for-duty examination" is broad, and it encompasses more than just tests.

13

### 1. "Fitness-for-Duty Examination" is not a defined or technical term.

A basic rule of construction is to give words their "ordinary everyday meanings," unless the context indicates they have a technical meaning. *See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts* 69 (2012). "Fitness-for-duty examination" is not defined in the Medical Rules, and the district court opinion revising the class definition does not ascribe a technical meaning to this term. *See Harris v. Union Pacific Railroad Company*, 329 F.R.D 616 (D. Neb. 2019). There is therefore no reason to impose a technical meaning onto the term "fitness-for-duty examination."

Giving the words their ordinary everyday meaning, a fitness-for-duty examination is an assessment, review, or evaluation of an employee's fitness-for-duty; the overall process of acquiring and examining information for the purpose of deciding if he was fit for duty, with or without reasonable accommodations.

### 2. "Fitness-for-Duty Examination" refers to all steps taken to assess an employee's fitness for duty.

An examination is not necessarily a medical exam or a test. Federal courts often use "examination" to refer to the review and assessment of information. *See, e.g., Am. Sustainable Bus. Council v. Hegar*, No. 1:24-CV-01010-ADA, 2026 U.S. Dist. LEXIS 22918, at *6 (W.D. Tex. Feb. 3, 2026) ("An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the

non-moving party."); *Grizzle v. Smith Unit Mailroom Staff*, No. No. 5:24-CV-00187-H, 2025 U.S. Dist. LEXIS 230384, at *1 (N.D. Tex. Nov. 25, 2025) ("The District Court made an independent examination of the record and reviewed the Magistrate Judge's report for plain error.")

Interpreting the term "fitness-for-duty examination" as Cooley suggests would make it synonymous with the term "fitness-for duty evaluation," a term that is used but not defined in the Medical Rules. The Medical Rules make it clear that a fitness-for duty evaluation includes more than just testing. Rather, according to the Rules, the term fitness-for-duty evaluation describes an assessment process that can sometimes include, but is not limited to, medical tests.

For example, the Rules say employees "are responsible for … [u]ndergoing a Fitness-for-Duty evaluation, including all medical tests, examinations, and evaluations deemed necessary by various government agencies and HMS." ROA.243. If a fitness-for-duty evaluation was limited to medical testing, the foregoing sentence would not include the words "examination, and evaluations."

A fitness-for-duty assessment could also include a review of records. In fact, the Medical Rules require employees to provide medical documentation upon request, further suggesting that a fitness-for-duty examination might include a review of documents and information. ROA.243.

15

The Rules also say fitness-for-duty evaluations "may include, but are not limited to various components such as: (1) regulatory medical certification requirements; (2) drug screen; (3) medical, psychological and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS." ROA.245. The assessment tools listed here include more than just medical testing using procedures such as the Ishihara or the CVFT. For conductors like Cooley, the "regulatory medical certification requirements" include the procedures described in the federal safety regulations found in 49 C.F.R. Part 242, Qualification and Certification of Conductors.

These regulations allow railroads to certify a conductor as fit for duty even if he or she fails all applicable tests. Pursuant to the regulations, if a conductor fails a test (like the Ishihara) and a secondary evaluation (like the CVFT), the medical director can still certify a conductor as fit for duty if he determines the employee "has the ability to safely perform as a conductor." 49 C.F.R. § 242.117(j). *See, e.g., Turner v. BNSF Ry. Co.*, 138 F.4th 224, 230 (5th Cir. 2025) (a railroad's medical examiner may certify a conductor who fails the tests "if he deems it would be safe for him or her to conduct a train.") In this scenario, the basis for certifying the conductor for duty would have to be something other than a test, such as a long work history of safe performance. The medical director's examination of the

16

employee's records and work history to assess his fitness for duty would fall squarely within the plain meaning of the term fitness-for-duty examination.

### 3.    *DeFries* supports Cooley's interpretation of the term "fitness-for-duty examination."

In *DeFries*, the Ninth Circuit Court of Appeals discussed the Medical Rules at length and stated:

> Though Union Pacific's color-vision testing program does not itself result in a formal diagnosis of color-blindness from a private medical doctor, failure of these tests is an event sufficiently akin to a formal diagnosis that Union Pacific automatically routes anyone who fails this FRA-required testing into a fitness-for-duty examination and labels them as having a "Diagnosis" of "Color Vision Deficit."

*DeFries* at 1106.

The first clause of this sentence refers to the color-vision testing program, which includes the Ishihara and color-vision field test. The second clause discusses what happens *after* an employee has failed both tests; the employee is routed into the fitness-for-duty examination where Health and Medical Services considers not only the tests, but other relevant information, to assess the employee's fitness for duty. Thus, the Court did not use "fitness-for-duty examination" as a specific reference to the color-vision field test, and *DeFries* supports the conclusion that the term fitness-for-duty examination is broad enough to encompass assessment measures other than tests.

17

**4.     Cooley's fitness-for-duty examination continued beyond September 18, 2014.**

In this case, construing the allegations in Cooley's favor, this examination process continued beyond September 18, 2014. The lower court acknowledged this possibility in its order denying Cooley's motion for reconsideration of the dismissal: "it *may* be true that the examination included the September 5 test and continued past September 18, 2014." ROA.564.

Common sense suggests that the assessment of Cooley's fitness for duty did not abruptly end the moment the CVFT concluded. The test results would have to be sent to Health and Medical Services for review, followed by additional actions necessary to determine Cooley's fitness for duty. For example, the definition of the term "fitness-for-duty" in the Medical Rules includes the ability to safely perform a job, with or without reasonable accommodations. Furthermore, federal safety regulations allow a railroad's medical director to certify a conductor to continue working even if he fails the secondary evaluation. Thus, there was more work to be done after the September 5, 2014 color-vision field test.

Cooley's complaint indicates that this work continued after September 25, 2014. On September 25, 2014, Union Pacific's Medical Director issued a document stating that permanent work restrictions were necessary, but the document says nothing about accommodations that may have allowed Cooley to continue working with the restrictions. ROA.256.

18

In a letter dated September 29, 2014, someone in the Transportation Services Department indicated that Cooley's permanent restrictions could not be accommodated. ROA.257. Thus, from these documents, it appears that on or after September 25, 2014, Health and Medical Services delegated the task of considering reasonable accommodations to the Transportation Services Department. This means the assessment of Cooley's fitness-for-duty continued past September 18, 2014, the key date in the revised definition of the *Harris* class.

It was therefore error for the district court to dismiss this case based on limitations. This Court should reverse that decision and remand the case to the district court for further proceedings.

## CONCLUSION

Appellant Jeffrey Todd Cooley requests an order reversing the district court's order dismissing this case.

Respectfully submitted:

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Appellant

19

# CERTIFICATE OF SERVICE

I certify that on June 22, 2026, I filed an electronic copy of the foregoing document with the Clerk of the United States Court of Appeals for the Fifth Circuit using the court's CM/ECF system, which will serve all counsel of record.

/s/ Donald E. Uloth
Donald E. Uloth

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 4,076 words.

2.    This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Donald E. Uloth
Donald E. Uloth