**No. 26-40211**

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

Jeffrey Todd Cooley,

Plaintiff - Appellant

v.

Union Pacific Railroad Company,

Defendant - Appellee

**On Appeal from**
United States District Court for the Eastern District of Texas

4:25-CV-56

**APPELLANT'S RECORD EXCERPTS**

SUBMITTED BY:

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro

# RECORD EXCERPTS
## TABLE OF CONTENTS

| <u>Tab</u> | <u>Document</u> | <u>Record Citation</u> |
|---|---|---|
| 1 | Docket Sheet | ROA.1-7 |
| 2 | Notice of Appeal | ROA.557 |
| 3 | Third Amended Complaint (without exhibits) | ROA.230-241 |
| 4 | Memorandum Opinion and Order (Nov. 3, 2025) | ROA.531-543 |
| 5 | Memorandum Opinion and Order (Apr. 27, 2026) | ROA.558-565 |

# CERTIFICATE OF SERVICE

I certify that on June 22, 2026, I filed an electronic copy of the foregoing document with the Clerk of the United States Court of Appeals for the Fifth Circuit using the court's CM/ECF system, which will serve all counsel of record.

/s/ Donald E. Uloth
Donald E. Uloth

Tab 1

APPEAL,CLOSED,JURY,PROTECTIVE-ORDER

Jump to Docket Table

# U.S. District Court
# Eastern District of TEXAS [LIVE] (Sherman)
# CIVIL DOCKET FOR CASE #: 4:25-cv-00056-ALM

Cooley v. Union Pacific Railroad Company
Assigned to: Chief District Judge Amos L Mazzant
Case in other court:  5th Circuit Court of Appeals, 26-40211
Cause: 42:12101 Americans with Disabilities Act

Date Filed: 01/20/2025
Date Terminated: 11/03/2025
Jury Demand: Plaintiff
Nature of Suit: 445 Civil Rights: Americans with Disabilities - Employment
Jurisdiction: Federal Question

**Plaintiff**

**Jeffrey Todd Cooley**

represented by **Donald Edward Uloth**
Law Office of Donald E. Uloth
18208 Preston Rd
Suite D-9 #261
Dallas, TX 75248
214-989-4396
Fax: 972-777-6951
Email: don.uloth@uloth.pro
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Union Pacific Railroad Company**

represented by **Jimmie L. Pinkham , III**
Baird Holm LLP
1700 Farnam St.
Suite 1500
Omaha, NE 68102
402-344-0500
Fax: 402-344-0588
Email: jpinkham@bairdholm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aarika Nicolle Johnson**
Constangy, Brooks, Smith & Prophete, LLP
1201 Elm Street
Suite 2550
Dallas, TX 75270
214-646-8625
Email: anjohnson@constangy.com
*TERMINATED: 09/12/2025*

26-40211.1

**John Hunter Johnson**
Constangy, Brooks, Smith & Prophete, LLP.
100 Crescent Court
Suite 700
Dallas, TX 75201
214-646-3421
Email: hjohnson@constangy.com
*ATTORNEY TO BE NOTICED*

**Mark Joseph Goldsmith**
Baird Holm LLP
1700 Farnam Street
Suite 1500
Omaha, NE 68102-2068
402-344-0500
Fax: 402-344-0588
Email: mgoldsmith@bairdholm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott P. Moore**
Baird Holm LLP
1700 Farnam Street
Suite 1500
Omaha, NE 68108
402-344-0500
Email: spmoore@bairdholm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/20/2025 | 1 (p.8) | COMPLAINT against Union Pacific Railroad Company ( Filing fee $ 405 receipt number ATXEDC-10629323.), filed by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Exhibit Union Pacific's Medical Rules)(Uloth, Donald) (Entered: 01/20/2025) |
| 01/20/2025 | 2 (p.30) | FIRST Fed. R. Civ. P. 7.1(a)(1) Disclosure Statement filed by Jeffrey Todd Cooley identifying Corporate Parent Union Pacific Corporation for Union Pacific Railroad Company. (Uloth, Donald) Modified docket text on 1/21/2025 (CLC). (Entered: 01/20/2025) |
| 01/20/2025 | 3 (p.32) | NOTICE *Civil Cover Sheet* by Jeffrey Todd Cooley re 1 (p.8) Complaint (Uloth, Donald) (Entered: 01/20/2025) |
| 01/20/2025 | | Case assigned to District Judge Amos L. Mazzant, III. (CLC) (Entered: 01/21/2025) |
| 01/21/2025 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge*. (CLC) (Entered: 01/21/2025) |

| | | |
|---|---|---|
| 01/21/2025 | 4 (p.33) | SUMMONS Issued as to Union Pacific Railroad Company. (CLC) (Entered: 01/21/2025) |
| 01/30/2025 | 5 (p.35) | NOTICE of Attorney Appearance - Pro Hac Vice by Jimmie L. Pinkham, III on behalf of Union Pacific Railroad Company. Filing fee $ 100, receipt number ATXEDC-10648378. (Pinkham, Jimmie) (Entered: 01/30/2025) |
| 01/30/2025 | 6 (p.37) | NOTICE of Attorney Appearance - Pro Hac Vice by Scott P. Moore on behalf of Union Pacific Railroad Company. Filing fee $ 100, receipt number ATXEDC-10648882. (Moore, Scott) (Entered: 01/30/2025) |
| 02/04/2025 | 7 (p.39) | NOTICE of Attorney Appearance - Pro Hac Vice by Mark Joseph Goldsmith on behalf of Union Pacific Railroad Company. Filing fee $ 100, receipt number ATXEDC-10657612. (Goldsmith, Mark) (Entered: 02/04/2025) |
| 02/11/2025 | 8 (p.42) | MOTION to Dismiss by Union Pacific Railroad Company. (Attachments: # 1 (p.8) Affidavit/Declaration Declaration with Exhibit A, # 2 (p.30) Proposed Order)(Pinkham, Jimmie) (Entered: 02/11/2025) |
| 02/11/2025 | 9 (p.65) | DEFENDANTS CORPORATE DISCLOSURE STATEMENT, by Union Pacific Railroad Company. (Pinkham, Jimmie) Modified text on 2/11/2025 (mmc). (Entered: 02/11/2025) |
| 02/19/2025 | 10 (p.67) | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 8 (p.42) MOTION to Dismiss by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Proposed Order)(Uloth, Donald) (Entered: 02/19/2025) |
| 02/21/2025 | 11 (p.70) | ORDER granting 10 (p.67) UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 8 (p.42) MOTION to Dismiss . Responses due by 3/18/2025. Signed by District Judge Amos L. Mazzant, III on 2/21/2025. (CLC) (Entered: 02/21/2025) |
| 03/04/2025 | 12 (p.71) | FIRST AMENDED COMPLAINT against Union Pacific Railroad Company, filed by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Exhibit Exhibit A U.P.s Medical Rules, # 2 (p.30) Exhibit Exhibit B Temporary Productive Work Plan, # 3 (p.32) Exhibit Exhibit C Documents sent to Cooley, # 4 (p.33) Exhibit Exhibit D Charge of Discrimination, # 5 (p.35) Exhibit Exhibit E EEOC Determination, # 6 (p.37) Exhibit Exhibit F EEOC Conciliation Failure and Notice of Rights)(Uloth, Donald) (Entered: 03/04/2025) |
| 03/06/2025 | 13 (p.113) | ORDER denying as moot 8 (p.42) Motion to Dismiss. Signed by Chief District Judge Amos L Mazzant on 3/6/2025. (mmc) (Entered: 03/06/2025) |
| 03/13/2025 | 14 (p.114) | ORDER GOVERNING PROCEEDINGS: Rule 26 Meeting Report due by 4/17/2025. Rule 16 Management Conference set for 5/1/2025 at 03:00 PM via Zoom or Telephone before Chief District Judge Amos L Mazzant. Signed by Chief District Judge Amos L Mazzant on 3/13/2025. (rpc) (Entered: 03/13/2025) |
| 03/18/2025 | 15 (p.124) | MOTION to Dismiss *Defendant's Motion to Dismiss Plaintiff's Amended Complaint* by Union Pacific Railroad Company. (Pinkham, Jimmie) (Additional attachment(s) added on 3/19/2025: # 1 (p.8) Proposed Order) (mmc). (Entered: 03/18/2025) |
| 03/18/2025 | 16 (p.140) | Proposed Pretrial Order *Granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint* by Union Pacific Railroad Company. (Pinkham, Jimmie) (Entered: 03/18/2025) |
| 04/01/2025 | | |

| | | |
|---|---|---|
| | 17 (p.141) | RESPONSE in Opposition re 15 (p.124) MOTION to Dismiss *Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed by Jeffrey Todd Cooley.* (Attachments: # 1 (p.8) Exhibit [Proposed] Second Amended Complaint)(Uloth, Donald) (Entered: 04/01/2025) |
| 04/07/2025 | 18 (p.194) | BRIEF filed *In Support of Motion to Dismiss Amended Complaint* by Union Pacific Railroad Company. (Pinkham, Jimmie) (Entered: 04/07/2025) |
| 04/15/2025 | 19 (p.201) | NOTICE *of Service of Defendant's Initial Disclosures* by Union Pacific Railroad Company (Pinkham, Jimmie) (Entered: 04/15/2025) |
| 04/17/2025 | 20 (p.204) | AGREED REPORT of Rule 26(f) Planning Meeting. (Uloth, Donald) (Entered: 04/17/2025) |
| 04/28/2025 | | The Court hereby CANCELS the May 1, 2025 Scheduling Conference; the Court will enter a Scheduling Order. (No attachment) (tls) (Entered: 04/28/2025) |
| 05/08/2025 | 21 (p.214) | SCHEDULING ORDER: Final Pretrial Conference set for 3/5/2026 at 09:00 AM in Ctrm 208 (Sherman) before Chief District Judge Amos L Mazzant. Amended Pleadings due by 7/24/2025. Discovery due by 10/16/2025. Joinder of Parties due by 6/12/2025. Jury instructions due by 2/19/2026. Mediation Completion due by 10/9/2025. Motions due by 10/10/2025. Proposed Pretrial Order due by 2/3/2026. Signed by Chief District Judge Amos L Mazzant on 5/8/2025. (CLC) (Entered: 05/08/2025) |
| 06/27/2025 | 22 (p.220) | UNOPPOSED MOTION for Extension of Time to File *Expert Witness Disclosures* by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Proposed Order)(Uloth, Donald) (Entered: 06/27/2025) |
| 06/30/2025 | 23 (p.227) | ORDER granting 22 (p.220) Motion to Extend the Deadlines for Expert Witness Disclosures. Signed by Chief District Judge Amos L Mazzant on 6/30/2025. (jmb) (Entered: 06/30/2025) |
| 07/10/2025 | 24 (p.228) | NOTICE *of Service of Defendant's Discovery Requests to Plaintiff* by Union Pacific Railroad Company (Pinkham, Jimmie) (Entered: 07/10/2025) |
| 07/24/2025 | | NOTICE of Hearing: At the Parties' request, a Telephone Conference is set for Thursday 7/24/2025 at 11:45 AM before Chief District Judge Amos L Mazzant. Attorneys are instructed to call the Conference Number at 11:40 AM: (571) 353-2301; Call ID: 172598549, followed by #. (No attachment) (tls) (Entered: 07/24/2025) |
| 07/24/2025 | | Minute Entry for proceedings held before Chief District Judge Amos L Mazzant: Telephone Conference held on 7/24/2025 from 11:45 - 11:53 a.m. By agreement of the parties, the Court orally grants Plaintiff leave to file an amended complaint. Court will leave [Dkt. 15] pending. Attorney Appearances: Plaintiff - Donald Uloth; Defense - Mark Goldsmith. No exhibits. (Court Reporter - Chris Bickham) (kkc) (Entered: 07/24/2025) |
| 07/24/2025 | 25 (p.230) | THIRD AMENDED COMPLAINT *against Defendant* against Jeffrey Todd Cooley, filed by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Exhibit U.P. Medical Rules, # 2 (p.30) Exhibit Temporary Productive Work Plan, # 3 (p.32) Exhibit Documents sent to Cooley, # 4 (p.33) Exhibit EEOC Charge, # 5 (p.35) Exhibit EEOC Cause Determination, # 6 (p.37) Exhibit EEOC Notice of Right to Sue)(Uloth, Donald) (Entered: 07/24/2025) |

| | | |
|---|---|---|
| 08/11/2025 | 26 (p.273) | JOINT MOTION to Modify Scheduling Order *(Mediation Deadline)* by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Proposed Order)(Uloth, Donald) (Entered: 08/11/2025) |
| 08/15/2025 | 27 (p.278) | ORDER granting 26 (p.273) Motion to Modify Mediation Requirements in the Scheduling Order. The Court vacates the deadline for completion of mediation. Signed by Chief District Judge Amos L Mazzant on 8/15/2025. (mmc) (Entered: 08/15/2025) |
| 09/08/2025 | 28 (p.279) | UNOPPOSED MOTION to Amend/Correct 21 (p.214) Scheduling Order/Docket Control Order, by Union Pacific Railroad Company. (Attachments: # 1 (p.8) Additional Attachment(s) Proposed Order)(Pinkham, Jimmie) (Entered: 09/08/2025) |
| 09/10/2025 | 29 (p.285) | UNOPPOSED MOTION to Withdraw as Attorney *Aarika Johnson* by Union Pacific Railroad Company. (Attachments: # 1 (p.8) Proposed Order Motion to Withdraw)(Johnson, John) (Entered: 09/10/2025) |
| 09/12/2025 | 30 (p.289) | ORDER granting 29 (p.285) Motion to Withdraw as Attorney. Attorney Aarika Nicolle Johnson terminated. Signed by Chief District Judge Amos L Mazzant on 9/12/2025. (rpc) (Entered: 09/12/2025) |
| 09/19/2025 | 31 (p.290) | ORDER denying 28 (p.279) Motion to Modify the Scheduling Order. Signed by Chief District Judge Amos L Mazzant on 9/19/2025. (mmc) (Entered: 09/19/2025) |
| 09/22/2025 | 32 (p.291) | NOTICE *of Deposition of Jeffrey Todd Cooley* by Union Pacific Railroad Company (Pinkham, Jimmie) (Entered: 09/22/2025) |
| 09/23/2025 | 33 (p.293) | NOTICE *Service of Supplemental Initial Disclosures* by Union Pacific Railroad Company (Pinkham, Jimmie) (Entered: 09/23/2025) |
| 09/30/2025 | 34 (p.296) | NOTICE *of Deposition of Dr. Carolyn Carman* by Union Pacific Railroad Company (Pinkham, Jimmie) (Entered: 09/30/2025) |
| 10/10/2025 | 35 (p.298) | UNOPPOSED MOTION to Seal *Summary Judgment Exhibits* by Union Pacific Railroad Company. (Attachments: # 1 (p.8) Proposed Order)(Pinkham, Jimmie) (Entered: 10/10/2025) |
| 10/10/2025 | 36 (p.302) | MOTION for Summary Judgment *and Memorandum* by Union Pacific Railroad Company. (Attachments: # 1 (p.8) Declaration of J Pinkham, # 2 (p.30) Exhibit A, # 3 (p.32) Exhibit B, # 4 (p.33) Exhibit C, # 5 (p.35) Exhibit D, # 6 (p.37) Exhibit E, # 7 (p.39) Exhibit F, # 8 (p.42) Exhibit G, # 9 (p.65) Exhibit H, # 10 (p.67) Exhibit J, # 11 (p.70) Exhibit A1, # 12 (p.71) Proposed Order)(Pinkham, Jimmie) (Entered: 10/10/2025) |
| 10/10/2025 | 37 (p.443) | SEALED ADDITIONAL ATTACHMENTS to Main Document: 36 (p.302) MOTION for *Summary Judgment Exhibits*. (Attachments: # 1 (p.8) Exhibit i, # 2 (p.30) Exhibit A2, # 3 (p.32) Exhibit A3, # 4 (p.33) Exhibit A4, # 5 (p.35) Exhibit A5, # 6 (p.37) Exhibit A6, # 7 (p.39) Exhibit A7, # 8 (p.42) Exhibit A8, # 9 (p.65) Exhibit A9, # 10 (p.67) Exhibit A10)(Pinkham, Jimmie) Modified docket entry relationship on 10/15/2025 (mmc). (Entered: 10/10/2025) |
| 10/10/2025 | 38 (p.444) | JOINT MOTION for Protective Order by Union Pacific Railroad Company. (Attachments: # 1 (p.8) Proposed Order)(Pinkham, Jimmie) (Entered: 10/10/2025) |
| 10/10/2025 | 39 (p.463) | UNOPPOSED MOTION to Seal Document *(Summary Judgment Exhibit 2)* by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Proposed Order)(Uloth, Donald) (Entered: 10/10/2025) |

| | | |
|---|---|---|
| 10/10/2025 | 40 | SEALED ADDITIONAL ATTACHMENTS to Main Document 41 (p.466) MOTION for Summary Judgment: Exhibit 2. (Uloth, Donald) Modified docket entry relationship on 10/15/2025 (mmc). (Entered: 10/10/2025) |
| 10/10/2025 | 41 (p.466) | MOTION for Summary Judgment *(Partial) on FRA Exhaustion Defense* by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Exhibit, # 2 (p.30) Exhibit Exhibit 2 cover page only, # 3 (p.32) Exhibit, # 4 (p.33) Exhibit, # 5 (p.35) Exhibit, # 6 (p.37) Exhibit, # 7 (p.39) Proposed Order)(Uloth, Donald) (Entered: 10/10/2025) |
| 10/17/2025 | 42 (p.507) | ORDER granting 35 (p.298) Motion to file certain exhibits to its Motion for Summary Judgment under seal. Exhibits A2-A10 and Ex. I may be filed under seal. Signed by Chief District Judge Amos L Mazzant on 10/17/2025. (CLC) (Entered: 10/17/2025) |
| 10/17/2025 | 43 (p.508) | PROTECTIVE ORDER. Signed by Chief District Judge Amos L Mazzant on 10/17/2025. (CLC) (Entered: 10/17/2025) |
| 10/17/2025 | 44 (p.524) | ORDER granting 39 (p.463) Motion to File Summary Judgment Exhibit 2 Under Seal. Signed by Chief District Judge Amos L Mazzant on 10/17/2025. (CLC) (Entered: 10/17/2025) |
| 10/27/2025 | 45 (p.525) | JOINT MOTION for Extension of Time to File Response/Reply *to Motions for Summary Judgment* by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Proposed Order)(Uloth, Donald) (Entered: 10/27/2025) |
| 10/30/2025 | 46 (p.530) | ORDER granting 45 (p.525) Motion for Extension of Time to Respond to 41 (p.466) MOTION for Summary Judgment *(Partial) on FRA Exhaustion Defense*, 36 (p.302) MOTION for Summary Judgment *and Memorandum* Responses due by 11/10/2025. Signed by Chief District Judge Amos L Mazzant on 10/30/2025. (CLC) (Entered: 10/30/2025) |
| 11/03/2025 | 47 (p.531) | MEMORANDUM OPINION AND ORDER. It is ORDERED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. # 15 (p.124) ) is hereby GRANTED and the case is hereby DISMISSED with prejudice. All pending motions not previously addressed by the Court are DENIED as moot. Signed by Chief District Judge Amos L Mazzant on 11/3/2025. (CLC) (Entered: 11/03/2025) |
| 11/28/2025 | 48 (p.544) | MOTION to Amend/Correct *Judgment*, MOTION for Reconsideration *of the Order Dismissing this Case* by Jeffrey Todd Cooley. (Attachments: # 1 (p.8) Proposed Order)(Uloth, Donald) (Entered: 11/28/2025) |
| 12/11/2025 | 49 (p.550) | RESPONSE to 48 (p.544) Motion to Amend/Correct, Motion for Reconsideration *Brief in Opposition to Plaintiff's Motion for Reconsideration of the Order Dismissing this Case filed by Union Pacific Railroad Company*. (Pinkham, Jimmie) (Entered: 12/11/2025) |
| 12/23/2025 | 50 (p.555) | REPLY to Response re 48 (p.544) MOTION to Amend/Correct *Judgment* MOTION for Reconsideration *of the Order Dismissing this Case filed by Jeffrey Todd Cooley*. (Uloth, Donald) (Entered: 12/23/2025) |
| 04/13/2026 | 51 (p.557) | NOTICE OF APPEAL to the Fifth Circuit as to 47 (p.531) Memorandum & Opinion,, Order Dismissing Case, by Jeffrey Todd Cooley. Filing fee $605, receipt number ATXEDC-11479744. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. USCA5 electronically notified. Copy of NOA to be sent by US Mail to appellees not electronically noticed. (Uloth, Donald) (Entered: 04/13/2026) |

| | | |
|---|---|---|
| 04/27/2026 | 52 (p.558) | MEMORANDUM OPINION AND ORDER denying 48 (p.544) Motion for Reconsideration of the OrderDismissing this Case filed by Jeffrey Todd Cooley Signed by Chief District Judge Amos L Mazzant on 4/27/2026. (mmc) (Entered: 04/27/2026) |
| 05/04/2026 | 53 (p.566) | TRANSCRIPT REQUEST by Jeffrey Todd Cooley re 51 (p.557) Notice of Appea. (Uloth, Donald) (Transcript is unnecessary) (ljw). (Entered: 05/04/2026) |
| 05/05/2026 | | NOTICE of Docketing Notice of Appeal from USCA re 51 (p.557) Notice of Appeal filed by Jeffrey Todd Cooley. USCA Case Number 26-40211. (mmc) (Entered: 05/05/2026) |

Tab 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| Jeffrey Todd Cooley, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-00056-ALM |
| | § | JURY |
| Union Pacific Railroad Company, | § | |
| | § | |
| Defendant. | § | |

## NOTICE OF APPEAL

Plaintiff hereby appeals to the United States District Court of Appeals for the Fifth

Circuit from the November 3, 2025 Memorandum Opinion and Order (Dkt # 47) granting

Defendant's Motion to Dismiss Plaintiff's Amended Complaint and dismissing the case with

prejudice.

Respectfully submitted,

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

On April 13, 2026, I filed the foregoing document with the Clerk of the U.S. District
Court for the Eastern District of Texas using the court's electronic filing system, which
constitutes service on all parties under Rule 5(b) of the Federal Rules of Civil Procedure.

/s/ Donald E. Uloth
Donald E. Uloth

1

Tab 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Jeffrey Todd Cooley, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-00056-ALM |
| | § | JURY |
| Union Pacific Railroad Company, | § | |
| | § | |
| Defendant. | § | |

## THIRD AMENDED COMPLAINT

Plaintiff Jeffrey Todd Cooley ("Cooley") complains of Defendant Union Pacific

Railroad Company ("Union Pacific" or "Defendant") for violations of the Americans with

Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

### Parties

1.      Cooley resides in Lindale, Texas.  He was an employee of Union Pacific, working

in Longview, Texas.

2.      Union Pacific is a railroad carrier engaged in interstate commerce.  It has

operations in Longview, Texas, and it is headquartered in Omaha, Nebraska.  Defendant has

appeared in this lawsuit through its attorneys, so it may now be served by serving its attorneys of

record.

### Jurisdiction and Venue

3.      This court has jurisdiction over the federal claims asserted herein pursuant to 28

U.S.C. § 1331.

1

4.      This Court has personal jurisdiction over Defendant because it does a substantial amount of business in Texas, and it has sufficient minimum contacts with the State of Texas to allow this Court to exercise personal jurisdiction over the Defendant in this case.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Venue is also proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in the State of Texas, and because Cooley would have continued to work in counties which comprise the Sherman Division if not for the unlawful employment practices complained of herein.

### Exhaustion of Administrative Remedies

6.      As described in greater detail below, Plaintiff has exhausted administrative remedies and complied with all procedural prerequisites to filing this lawsuit by dual filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division, and he has received a notice of his right to sue from the EEOC.

7.      Cooley was not required to exhaust the administrative review process that was established by the Federal Railway Administration.  This process is optional, and conductors who are denied recertification are not required to pursue this process before asserting claims under the ADA.  Furthermore, even if the process was mandatory, exhaustion of these administrative remedies is not jurisdictional and would not bar a conductor from pursuing an ADA claim.  Additionally, Union Pacific did not notify Cooley that it was denying or had denied his recertification as a conductor, so Cooley had no certification decision to appeal through this administrative review process, making an exhaustion requirement not applicable.

2

## Relevant Facts

*Cooley's employment, and his color vision testing history:*

8.      Union Pacific hired Cooley in February 2004 as a brakeman.

9.      Before hiring Cooley, Union Pacific had him take a pre-employment physical that included hearing and vision testing.  Cooley did not pass an Ishihara color vision test that was administered as part of the pre-employment testing, so Cooley, acting on his own, made arrangements to take a Farnsworth color vision test, which is a more difficult test.  Cooley passed the Farnsworth test with a perfect score, which showed his color vision met the standards required for a railroad to certify him as a conductor.  Cooley provided the Farnsworth test results to Union Pacific.

10.      Union Pacific then had Cooley take a third type of color vision test, which he passed, and he was allowed to begin work as a brakeman.

11.      Cooley later became a conductor.  For close to ten years, he worked ably and safely, in and around trains, as a thru freight conductor based in Longview, Texas.

12.      Every two or three years, Union Pacific retested Cooley's color vision.  Each time, Cooley's color vision was first tested using the Ishihara test, which Cooley failed.  Union Pacific would then test Cooley's color vision using a field test where he and a supervisor walked around Union Pacific's train yard in Longview and Cooley identified the colors of wayside (track-side) signals that were used to control the movement of trains in the yard.  Each time, after passing the second test, Union Pacific recertified Cooley as a conductor and he was allowed to continue working.

13.      Union Pacific received and had in its possession records of all vision tests and tests results from the vision tests described above.

26-40211.232

*Union Pacific's fitness-for-duty policies and practices:*

14.    As of February 1, 2014, Union Pacific revised its Medical Rules.  The Medical Rules outline Union Pacific's Fitness-for-Duty program, and the fitness-for-duty evaluations conducted on employees.  A copy of the Medical Rules is attached to this Complaint as Exhibit A.

15.    By design, the rules were standardized, which means the fitness-for-duty evaluations were often not truly individualized assessments of an employee's ability to safely perform the essential functions of the employee's job.  Union Pacific then imposed standardized work restrictions, as opposed to restrictions tailored to the individual and the applicable situation.

16.    Because of its rigid and formulaic approach to assessing the abilities of persons with disabilities, many Union Pacific employees who never had a problem performing the essential functions of their jobs were removed from work without pay, and/or forced to disclose sensitive health and medical information.  Many, like Cooley, have been deprived of their livelihoods, as explained below.

*Union Pacific imposed a one-size-fits-all work restriction on Cooley, which cost him his job:*

17.    On August 28, 2014, as part of his Federal Railroad Administration (FRA) certification as a conductor, Union Pacific arranged for Cooley to take the Ishihara color vision test, which he failed.  Union Pacific received copies of the tests results, which they later relied on to make the employment decisions complained of herein.  Cooley was not removed from service at this time.

18.    On or about September 5, 2014, Union Pacific required Cooley to take a color vision field test.  This time, however, Cooley was sent to a different location, a Union Pacific train yard in Fort Worth, for a different kind of field test.

19.    In all prior field tests, Union Pacific used multiple wayside signals that were in use

4

controlling the movement of trains; these were signals that Cooley actually encountered on the job as a conductor.  In Fort Worth, Union Pacific used just one signal for the test, and it was not the same type of signal as those that Cooley encountered on the job.  It was an older type of signal that was not as bright, and less clear.  Furthermore, the signal used for this test in Fort Worth was not in use actually controlling the movement of trains.

20.     In prior tests, Cooley's eyes were level (or close to level) with the signals he was asked to identify.  In Fort Worth, the signal was on top of an overpass, and Cooley was standing on the ground, so he was looking up at an angle, unlike all prior tests where Cooley's eye level was close to the same level as the signals he was asked to identify.  The angle was also unlike the angle at which Cooley viewed signals when he was on the job, sitting in the cab of a locomotive approximately 18-20 feet above the ground.

21.     In prior tests, Cooley was asked to look at multiple signals all around him, so the angle of the sun was different for each signal.  In Fort Worth, both Cooley and the signal were in fixed locations, and the sun was shining on the lenses, washing out the colors and making them difficult to identify.

22.     Furthermore, Union Pacific failed to follow its own standards and testing protocols for the September 5, 2014 color vision field test.  For example, there was no signal maintainer present to make sure the signal being used for the test was working properly.    The test was therefore unreliable, and not an accurate test of Cooley's ability to detect the color of the wayside train signals Cooley actually encountered when doing his job as a conductor.

23.     Union Pacific informed Cooley that he failed this test.  Cooley did not fail this test due to a color vision deficiency; he failed because it was a flawed test, and because the test results were misinterpreted as an indication of color vision deficiency by Union Pacific's medical director.

5

24.     Cooley's color vision did not change during his employment with Union Pacific, and it had not gotten worse in between the September 5, 2014 test and the color vision field test he had taken and passed just two or three years before.

25.     Union Pacific had and relied on the test results from the September 5, 2014 test when it made the employment decisions complained of herein.

26.     Based on Cooley's vision tests, up to and including the September 5, 2014 test, Union Pacific had in its possession documents indicating to it that Cooley was substantially impaired with respect to the major life activities of seeing and seeing in color.  The facts alleged herein also show that Union Pacific regarded Cooley as having an impairment that affected his ability to see and to see in color.

27.     On September 8, 2014, Union Pacific had Cooley sign a Temporary Productive Work (TPW) Plan (the "Plan").  A true and correct copy of this Plan is attached to this Complaint as Exhibit B.  According to the Plan, starting retroactively as of September 5, 2014 and ending September 19, 2014, Cooley was placed under a temporary two-week work restriction that stated: "Work in [a] position requiring accurate color signal recognition is prohibited."  Beginning September 8, 2014, instead of working as a conductor, Cooley temporarily performed light duty tasks.  See Exhibit B.  Cooley reasonably believed that he would soon resume his duties as a conductor.

28.     On or about October 1, 2014, Cooley received letters and other documents from Union Pacific in the mail.  True and correct copies of the documents Plaintiff believes he received at this time are attached to this Complaint as Exhibit C.  These documents indicate that as of September 25, 2014, based on its review of the available medical documentation, Union Pacific decided to permanently restrict Cooley from work involving "accurate identification of colored

6

train signals." This was one of Union Pacific's pre-drafted and standardized work restrictions for employees regarded as having (or with a record of having) some level of color vision impairment. Other documents Cooley received stated that Union Pacific could not accommodate his restrictions, and that Union Pacific was unable to identify a reasonable accommodation that would permit him to safely return to work in his assigned position.

29.    Union Pacific never notified Cooley that he was being denied recertification as a conductor, and it never notified Cooley that he could file a petition for review of a certification decision with the Federal Railroad Administrator.

30.    Cooley's ability to detect the color of wayside train signals was not impaired, and he had worked as a conductor for years without any difficulty performing this function. But even if Union Pacific had reason to believe Cooley was impaired with respect to this job function, there was a reasonable accommodation available that should have eliminated any cause for concern. Cooley could have worn chromatic lenses, which improve a person's ability to discern certain colors.

31.    Union Pacific would not allow Cooley to use chromatic lenses for either the color vision field test or while working as a conductor, although there was no legal impediment to doing so.

32.    As a result of these actions, Cooley lost his job, and he stopped being paid. He was never notified of a termination, and he believes that he is still classified as a Union Pacific employee.

33.    No doctor employed by or affiliated with Union Pacific ever examined Cooley.

34.    Ever since September 29, 2014, Union Pacific has refused to allow Cooley to return to his job as a conductor. Cooley requested to return to Union Pacific in his former role via

7

certified letters on May 5, 2016, and June 10, 2016, but Union Pacific never responded.

35.  From 2015 to 2017, Cooley applied to Union Pacific jobs, including yardmaster trainee, material handler, and track laborer-regional driver, but he was rejected from all positions he applied for because of the permanent restrictions Union Pacific imposed on him.

36.  After he lost his job as a conductor, Cooley obtained a commercial driver's license, and he began working for the Texas Department of Transportation.  He earns substantially less than he did while working for Union Pacific.  In connection with his application for, and his employment with, the Texas Department of Transportation, Cooley's color vision has been tested multiple times as required by federal regulations applicable to jobs requiring a commercial driver's license.  Each time, Cooley has been cleared to continue working.

37.  Cooley remains capable of working as a conductor for Union Pacific to this day.

***Cooley's claims are not barred by limitations because of American Pipe tolling:***

38.  Cooley's claims are not barred by limitations because of a class action lawsuit that tolled limitations on the claims asserted herein from September 18, 2014 through March 24, 2020. *See Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

39.  Cooley was a putative class member in the *Harris* case because he falls within the class as originally defined, and because his claims accrued on or after September 18, 2014. Cooley's disability discrimination claims have therefore been subject to tolling pursuant to the Supreme Court's rulings in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

40.  The Court certified the *Harris* case as a class action in February 2019, using a definition of the class that differed slightly from the earlier definition.  Cooley continued to be a member of the class action as certified by the district court.

8

41.     The Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

42.     As a result of *American Pipe* tolling, Cooley still had time left after the date of the Eighth Circuit's order to timely file a charge of discrimination with the EEOC.  Furthermore, shortly after the Eighth Circuit issued its order reversing class certification, the parties in the *Harris* case entered into a tolling agreement, extending the statute of limitations for Cooley's and other putative class members' claims by an additional sixty (60) days.

43.     On March 30, 2024, Cooley timely dual-filed a charge of discrimination with the EEOC and the Texas Workforce Commission, Civil Rights Division.  A true and correct copy of this charge is attached to this Complaint as Exhibit D.

44.     On September 4, 2024, the EEOC issued a Determination finding reasonable cause to believe Union Pacific discriminated against Cooly because of disability.  A true and correct copy of this Determination is attached to this Complaint as Exhibit E.

45.     On October 22, 2024, the EEOC issued a Conciliation Failure and Notice of Rights informing him he had the right to sue Union Pacific.  A true and correct copy of this document is attached to this Complaint as Exhibit F.  Cooley timely filed this lawsuit on January 20, 2025.

**First Cause of Action**
**Disparate Treatment Disability Discrimination**

46.     The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

47.     At all relevant times, Cooley was an individual with a disability under 42 U.S.C. § 12102(1)(B) and (C).  Union Pacific made its decisions based on medical records and information available to the company indicating to it that Cooley was substantially limited with respect to the

9

major life activities of seeing and seeing in color. The facts also show that Union Pacific regarded Cooley as having a physical or mental impairment that impairs one or more major life activities, including seeing, and seeing in color. The facts therefore show Cooley had a disability under the "record of" and "regarded as" definitions. Union Pacific took the adverse actions complained of herein because of his "record of" and "regarded as" disability. Cooley is not alleging that he had an actual disability under subsection (A).

48. At all relevant times, Cooley had the requisite skill, experience, education, and other job-related requirements of his position, and he was therefore a qualified individual under the ADA.

49. At all relevant times, Cooley could safely perform the essential functions of his position, with or without reasonable accommodations.

50. Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

51. Discriminating on the basis of disability also includes failing to accommodate employees' disabilities when doing so would be reasonable.

52. Union Pacific discriminated against Cooley on the basis of disability on or about September 25, 2014 when it imposed permanent work restrictions that caused Cooley to lose his job and his income, and by refusing to employ one or more reasonable accommodations that would have eliminated Union Pacific's mistaken concerns about Cooley's color vision abilities (including allowing the use of chromatic lenses for the September 5, 2024 color vision field test, and allowing Cooley to wear chromatic lenses on the job).

10

26-40211.239

53.     Because Union Pacific violated 42 U.S.C. § 12112, Cooley has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.  Cooley is also entitled to attorneys' fees and costs incurred in connection with these claims.

54.     Union Pacific committed the acts complained of with reckless or deliberate disregard for the rights and safety of Cooley.  As a result, Cooley is entitled to punitive damages.

## Equitable and Injunctive Relief

55.     Defendant intentionally engaged in the unlawful employment practices described in this Complaint.  This Court may therefore enjoin Defendant from engaging in such unlawful employment practices, and order other equitable relief as this Court deems appropriate.

56.     Cooley therefore requests an award of injunctive relief prohibiting Defendant from further engaging in the unlawful employment practices described in this Complaint.

57.     Cooley also requests reinstatement to his position, with back pay.

## Jury Demand

58.     Plaintiff demands a trial by jury on all claims asserted in this Complaint for which a trial by jury is allowed by law.

## Prayer for Relief

**WHEREFORE,** Plaintiff requests judgment against Defendant as follows:

a.     Judgment finding that the unlawful actions described in this Complaint constitute violations of the ADA;

b.     Judgment enjoining Defendant and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages described in this Complaint;

11

c.  Judgment awarding Plaintiff all compensable damages, including all economic losses, lost past and future income and benefits of employment, and compensatory damages such as suffering, mental anguish, emotional distress, inconvenience, loss of personal status and dignity, and loss of enjoyment of life;

d. Judgment awarding all costs of court, expert witness fees, and attorney fees recoverable by law;

e.  Judgment awarding punitive damages;

f.  Judgment awarding such other relief under the ADA to which Plaintiff is entitled by law;

g.  Judgment awarding all pre-judgment and post-judgment interest to which Plaintiff is entitled by law;

h.  Judgment awarding all other and further relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on July 24, 2025, I served a copy of this document and all attachments by email to all counsel of record for Defendant.

/s/ Donald E. Uloth
Donald E. Uloth

12

Tab 4

# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

JEFFREY TODD COOLEY,      §
     §
         *Plaintiff*,      §
     §
v.      §
     §     Civil Action No. 4:25-cv-56
UNION PACIFIC RAILROAD      §     Judge Mazzant
COMPANY,      §
     §
         *Defendant.*      §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") (Dkt. #15). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #15) should be **GRANTED**.

## BACKGROUND

### I.     Factual Background

Plaintiff Jeffrey Todd Cooley ("Plaintiff") brings this disability discrimination suit against his employer, Defendant Union Pacific Railroad Company ("Defendant") (Dkt. #25).[1] In February 2004, Defendant hired Plaintiff as a brakeman and conductor (Dkt. #25 at ¶¶ 8–9). Prior to and throughout his employment, Plaintiff underwent various color vision tests, often failing the Ishihara test and then passing a secondary color-vision

---

[1] On January 20, 2025, Plaintiff filed the instant lawsuit against Defendant (Dkt. #1). On March 4, 2025, Plaintiff filed his Second Amended Complaint (Dkt. #12). On July 24, 2025, Plaintiff filed his Third Amended Complaint (Dkt. #25), in which Plaintiff excluded his previously asserted failure-to-accommodate claim against Defendant (*see also* Dkt. #17 at p. 10). The Court considers the allegations made in Plaintiff's Third Amended Complaint (Dkt. #25) for the purpose of summarizing a factual background and making its determinations on the issue raised in the instant Motion.

test (Dkt. #25 at ¶¶ 9–12). Plaintiff continued his employment as a conductor for the next ten years, working ably and safely (Dkt. #25 at ¶ 11).

On February 1, 2014, Defendant updated its "Medical Rules," which encompassed Defendant's Fitness-for-Duty evaluations (Dkt. #25 at ¶ 14; Dkt. #25-1 at pp. 1, 4). A Fitness-for-Duty evaluation is Defendant's assessment of an employee's ability to safely perform the essential functions of that employee's position (Dkt. #25 at ¶¶ 14–15). On August 28, 2014, as part of his Federal Railroad Administration ("FRA") conductor recertification, Plaintiff failed the Ishihara color vision test (Dkt. #25 at ¶ 17; Dkt. #25-3). On September 5, 2014, Plaintiff also failed a secondary "Color Vision Field Test" (Dkt. #25 at ¶ 18; Dkt. #25-3).

On September 8, 2014, Plaintiff was placed on a Temporary Productive Work Plan (the "TPW Plan") (Dkt. #25 at ¶ 27; Dkt. #25-2). The TPW Plan, starting retroactively on September 5, 2014, and continuing to September 19, 2014, restricted Plaintiff from working as a conductor because the position required "accurate color signal recognition" (Dkt. #25 at ¶ 27; Dkt. #25-2). On September 25, 2014, Defendant notified Plaintiff of its assessment which determined that Plaintiff did not meet the FRA medical standards for vision, and Plaintiff would be permanently restricted from work requiring "accurate identification of colored train signals" (Dkt. #25 at ¶ 28; Dkt. #25-3). Through this correspondence and subsequent letter dated September 29, 2014, Defendant notified Plaintiff he was unable to identify a reasonable accommodation that would permit him to safely return to work as a conductor (Dkt. #25 at ¶ 28; Dkt. #25-3). Since September 29, 2014, Defendant has refused to allow Plaintiff to return to work and has stopped paying him (Dkt. #25 at ¶¶ 32, 34).

2

## II. Procedural History

Plaintiff was not the only litigant to take issue with Defendant's revision of the Fitness-for-Duty evaluations. On February 19, 2016, several of Defendant's employees who had been removed from their positions following an evaluation filed a lawsuit against Defendant alleging, *inter alia*, that Defendant's Fitness-for-Duty evaluations and subsequent employment decisions violated the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.* (the "ADA") (Dkt. #25 at ¶ 38). *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). The proposed *Harris* class was defined as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with [Defendant] for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Id.*

On February 5, 2019, the United States District Court of Nebraska certified the *Harris* class to more narrowly consist of: "All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." 329 F.R.D. at 628. Defendant filed an interlocutory appeal of this class certification, and on March 24, 2020, the United States Court of Appeals for the Eight Circuit reversed the certification. *Harris v. Union Pacific R.R. Co.*, 953 F.3d 1030, 1039 (8th Cir. 2020). The instant lawsuit comes to this Court following the *Harris* class decertification.

On March 30, 2024, Plaintiff dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") and the Texas Workforce

Commission (Dkt. #25 at ¶ 43).[2] On September 4, 2024, the EEOC provided Plaintiff with a determination letter (Dkt. #25 at ¶ 44). On October 22, 2024, the EEOC provided Plaintiff with a right to sue letter (Dkt. #25 at ¶ 45). On January 20, 2025, Plaintiff filed the present suit against Defendant (Dkt. #1). Plaintiff amended his complaint twice, ultimately alleging Defendant was liable for disparate treatment disability discrimination under the ADA (Dkt. #1; Dkt. #12; Dkt. #25).

In his Third Amended Complaint (the "Complaint"), Plaintiff asserts the following regarding the *Harris* class action: (1) Plaintiff was a putative class member in the *Harris* case; (2) Plaintiff's claims against Defendant accrued on or after September 18, 2014; and (3) the *Harris* class action tolled the statute of limitations period for his claims against Defendant asserted herein from September 18, 2014 through March 24, 2020 (Dkt. #25 at ¶¶ 38–39).

On March 18, 2025, Defendant filed the instant Motion, arguing Plaintiff's ADA claim is time-barred (Dkt. #15). On April 1, 2025, Plaintiff filed his Response to Defendant's Motion (Dkt. #17). On April 7, 2025, Defendant filed its Reply (Dkt. #18). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV.

---

[2] Attached to the operative complaint is Plaintiff's dual-filed Charge of Discrimination with the EEOC and the Texas Workforce Commission - Civil Rights Division (Dkt. #25-4). Plaintiff signed this filing on January 31, 2020 (Dkt. #25-4), but Plaintiff alleges he did not file this charge until March 30, 2024 (Dkt. #25 at ¶ 43). The Court will consider January 31, 2020, as the filing date as supported by Defendant's factual background (Dkt. #15 at p. 5).

4

P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the

5

complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendant urges the Court to dismiss Plaintiff's Complaint because his claims are time-barred (Dkt. #15 at pp. 1, 6–11). Further, Defendant argues Plaintiff fails to state a claim for relief based upon an "actual" or "record of" disability under the ADA (Dkt. #15 at pp. 11–13). The Court considers each argument in turn.

### I.      Plaintiff's ADA claim is time-barred.

Plaintiff's only claim is for disparate treatment under the ADA (Dkt. #25). Defendant argues Plaintiff failed to timely comply with the ADA's administrative prerequisites prior to commencing this action. Under the ADA, a plaintiff must exhaust their administrative remedies against their employer before pursuing their claims in federal court. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)(1)). To do so, a plaintiff must file a charge of discrimination with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice, within 300 days of the defendant's alleged discriminatory act. *Id.*; 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e–5(e)).

6

Here, the applicable limitations period for Plaintiff's ADA claim began to run from the time Plaintiff knew or reasonably shown have known that Defendant's challenged conduct occurred. *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874 (5th Cir. 2003). However, under *American Pipe & Const. Co. v. Utah*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). A district court's certification of a class therefore establishes "the pertinent class definition" so that each member of the class's claims are tolled "until the class is decertified or the case is otherwise resolved." *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 319 (5th Cir. 2024) (determining plaintiff was a member of the *Harris* class, and thus, his claims were tolled because the failure of the Ishihara vision test "at least suggested that his previously certified color vision acuity may have no longer been passable, such that it met the definition of a 'reportable health event.'").

Defendant argues Plaintiff's claims are time-barred for two reasons: (1) he was never a member of the *Harris* class, meaning the limitations period continued to run; and (2) even if he was initially a member of the *Harris* class, Plaintiff was unambiguously excluded from the class when the class was certified on February 5, 2019 (Dkt. #15 at p. 6). In contrast, Plaintiff contends his discrimination claims against Defendant should benefit from the tolling period because his claims accrued after September 18, 2014—during the tolling period created by the *Harris* case (Dkt. #25 at ¶¶ 38–39; Dkt. #17 at p. 4). Specifically, Plaintiff argues his claims are based on the adverse actions taken by Defendant on September 25, 2014, when Defendant imposed permanent restrictions on his employment, and on

7

September 29, 2014, when Defendant determined it could not accommodate the restrictions (Dkt. #17 at p. 5).

To determine whether Plaintiff benefitted from the tolling period created in *Harris*, the Court must determine whether Plaintiff was included in the *Harris* class, and if so, how long was he included in that class. "A class is initially defined by the plaintiffs via their complaint." *Zaragoza*, 112 F.4th at 318. "As class actions progress, plaintiffs may expand, narrow, or otherwise refine their action by filing amended pleadings." *Id*. at 318. With respect to tolling,

> [W]hen a district court certifies a class, that certified class becomes the pertinent class definition. Further, the class definition persists through appeal. A subsequent decertification of that class, either by the district court or the appellate court, ends tolling going forward but does not affect the earlier class certification for tolling purposes.

*Id*. at 319.

First, looking at the then-operative pleading, the Court must determine if Plaintiff was included in the proposed class definition of the operative complaint in *Harris*, which defined the putative class as follows:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with [Defendant] for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

329 F.R.D. at 621.

Here, the parties agree that the operative date at issue is September 18, 2014, which is 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination (Dkt. #15 at p. 7; Dkt. #17 at p. 4). Thus, September 18, 2014, is the start of

8

the tolling period. However, the parties disagree as to when Plaintiff was involuntarily removed from service and when he suffered an adverse employment action. Plaintiff argues Defendant's imposition of the permanent removal from his position was the adverse action at issue, which occurred *after* September 18, 2014 (Dkt. #17 at p. 5). Defendant argues Plaintiff was removed from service as a conductor on September 8, 2014, which occurred *before* September 18, 2014, and thus, excludes him from the *Harris* class as initially defined above (Dkt. #15 at p. 7).

The Court, by accepting as true all well-pleaded facts in the Complaint and viewing those facts in the light most favorable to Plaintiff, agrees with Plaintiff. *Bowlby*, 681 F.3d at 219. On September 8, 2014, Defendant placed Plaintiff on the TPW Work Plan, where he was restricted for a period of two weeks from working as a conductor but not permanently removed from service (Dkt. #25 at ¶ 27). Because Plaintiff was involuntarily removed from service and suffered an adverse employment action *after* September 18, 2014, Plaintiff was included in the *Harris* class, as originally pleaded (Dkt. #17 at p. 5). 329 F.R.D. at 621. Therefore, Plaintiff's ADA disability discrimination claim was tolled through this initial putative class definition.

Second, the Court must determine if Plaintiff was included in the *Harris* district court's certified class under the revised definition, thereby tolling his ADA claim until the *Harris* class was decertified on March 24, 2020. 953 F.3d at 1039. As stated before, the *Harris* district court certified a class of plaintiffs including: "All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." 329 F.R.D. at 628.

9

Plaintiff's inclusion in the *Harris* class under *American Pipe* hinges on when he was "subject to a fitness-for-duty examination" that occurred "as a result of a reportable health event" (Dkt. #25 at ¶¶ 14, 38; Dkt. #15 at p. 4). *Harris*, 329 F.R.D. at 628; *American Pipe*, 414 U.S. at 554.

*Zaragoza* is instructive to the Court's analysis. *See* 112 F.4th at 321. In that case, the Fifth Circuit considered whether an employee's failure to pass an Ishihara color vision test determined that employee's inclusion in the *Harris* class. *Id.* at 319. The Fifth Circuit held the plaintiff's first instance failing the Ishihara color vision test "met the definition of a 'reportable health event'" under the *Harris* class definition. *Id.* at 321. The secondary light cannon test was therefore a "fitness-for-duty examination as a result of a reportable health event," and not the "reportable health event" itself. *Id.* Unlike Plaintiff, the plaintiff in *Zaragoza* failed both the Ishihara test and the secondary vision test in 2016—almost two years *after* the tolling period began on September 18, 2014, for the *Harris* class; therefore, the plaintiff in *Zaragoza* was included in the *Harris* class definition and enjoyed the tolling of his claims. *Id.*

Here, Defendant argues Plaintiff's failure of the Ishihara color vision test on August 28, 2014 was a reportable health event that caused Plaintiff to be subjected to the secondary color vision test on September 5, 2014, which Defendant considers the fitness-for-duty examination (Dkt. #15 at p. 9 (citing *Zaragoza*, 112 F.4th at 321 ("finding that failure of the regulatory Ishihara test is a 'reportable health event triggering a fitness-for-duty examination the color-vision field test"))). Thus, according to Defendant, Plaintiff was subject to a fitness-for-duty examination as a result of a reportable health *before* September 18, 2014, and,

10

26-40211.540

specifically, thirteen days outside of the tolling period created by the narrowed *Harris* class definition (Dkt. #15 at p. 9). In contrast, Plaintiff argues the color vision tests he performed on August 28, 2014, and September 5, 2014, fully determined whether Plaintiff was fit for duty (Dkt. #17 at p. 9). Further, Plaintiff argues the determination was made by Defendant's Health and Medical Services over a period of time that concluded upon deciding Plaintiff was permanently restrict from his position on September 25, 2014 (Dkt. #17 at p. 10).

The Court is not convinced by Plaintiff's argument. Even accepting as true all well-pleaded facts in Plaintiff's Complaint and viewing the facts in the light most favorable to Plaintiff, Plaintiff's claim is distinguishable from *Zaragoza* because it accrued thirteen days *before* the *Harris* class tolling period began (Dkt. #25 at ¶ 18). *Bowlby,* 681 F.3d at 219. Again, on August 28, 2014, Plaintiff failed his Ishihara color vision test (Dkt. #25 at ¶ 17). Plaintiff's failure triggered Defendant's decision to carry out a secondary evaluation, and on September 5, 2014, Plaintiff subsequently failed the secondary color vision test (Dkt. #25 at ¶ 18). Plaintiff's first test was a "reportable health event" under Defendant's revised fitness-for-duty evaluations (Dkt. #25 at ¶ 17) because it indicated a "significant vision change in one or both eyes affecting… color vision" (Dkt. #25-1 at ¶ 12). *See Zaragoza*, 112 F.4th at 321. The subsequent field vision test—which Plaintiff also failed—on September 5, 2014, is the date Plaintiff was "subject to a fitness-for-duty examination" by Defendant "as a result of a reportable health event" (Dkt. #25 at ¶ 18); (Dkt. #15 at p. 4).

Accordingly, Plaintiff was excluded from the revised *Harris* class definition as initially certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his disability discrimination claims were only tolled from the time they accrued until February 5, 2019.

11

*Harris*, 329 F.R.D. at 628; *see also American Pipe*, 414 U.S. at 554. As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117. However, Plaintiff did not file his Charge of Discrimination seeking administrative relief under the ADA until January 31, 2020, which was 60 days too late (Dkt. #25-4; Dkt. #15 at p. 5). Accordingly, because Plaintiff was excluded from the certified class in *Harris* on February 5, 2019, and he failed to timely comply with the ADA's administrative prerequisites prior to commencing this action, Plaintiff's disparate treatment claim under the ADA is time-barred.

Accordingly, because Plaintiff's disparate treatment disability discrimination claim is time-barred, the Court finds that Plaintiff has failed to state a plausible claim for relief under Rule 12(b)(6), and Defendant's Motion should therefore be **GRANTED**.

**II.      Defendant's remaining arguments are moot or inconsequential to the Court's determination.**

Defendant raises the following additional arguments in its Motion: (1) Plaintiff's previous failure-to-accommodate claim is time-barred (Dkt. #15 at pp. 10–11); and (2) Plaintiff fails to state a claim based upon an "actual" or "record of" a disability (Dkt. #15 at pp. 11–13). These arguments are now moot. First, Plaintiff decided not to pursue his failure to accommodate claim (Dkt. #17 at p. 10) and did not include such claim in his Third Amended Complaint (Dkt. #25). Second, the Court has determined Plaintiff's disparate treatment disability discrimination claim is time-barred under the ADA, so any argument related to pleading deficiencies in that claim is inconsequential.

12

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #15) is hereby **GRANTED** and the case is hereby **DISMISSED** with prejudice.

All pending motions not previously addressed by the Court are **DENIED** as moot, and the Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED.**

**SIGNED this 3rd day of November, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

26-40211.543

Tab 5

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

JEFFREY TODD COOLEY, §
§
*Plaintiff*, §
§
v. §       Civil Action No. 4:25-cv-56
§       Judge Mazzant
UNION PACIFIC RAILROAD §
COMPANY, §
§
*Defendant.* §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Reconsideration of the Order Dismissing this Case (the "Motion") (Dkt. #48). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On November 3, 2025, the Court entered its Memorandum Opinion and Order granting Defendant Union Pacific Railroad Company's ("Defendant") motion to dismiss, thereby dismissing Plaintiff Jeffrey Todd Cooley's ("Plaintiff") claims with prejudice (the "November 3 Order") (Dkt. #47). Within the November 3 Order, the Court detailed the factual and procedural background of this case and incorporates that summary herein.

In short, Defendant employed Plaintiff as a conductor (Dkt. #25). On February 1, 2014, after employing Plaintiff for ten years, Defendant updated its Medical Rules (Dkt. #25 at ¶¶ 11, 14). Defendant's Health and Medical Services ("HMS") used these Medical Rules to determine an employee's "Fitness for Duty," which is the employee's "medical and functional ability to safely perform a job, with or without reasonable accommodations, and meet medical standards

26-40211.558

established by regulatory agencies in accordance with federal and state laws" (Dkt. #25-1 at p. 1 (citation modified)).

On August 28, 2014, Plaintiff was administered an Ishihara color vision test required by the Federal Railroad Administration ("FRA") to obtain his conductor certification, which he failed (Dkt. #25 at ¶ 17). On September 5, 2014, Defendant required Plaintiff to take a secondary color vision field test (the "September 5 Test"), which he also failed (Dkt. #25 at ¶¶ 18, 23). On September 8, 2014, Plaintiff was temporarily removed from his position as a conductor and prohibited from doing any work "requiring accurate color signal recognition" (Dkt. #25 at ¶ 27). Finally, on September 29, 2014, Defendant notified Plaintiff that, effective September 25, 2014, he was permanently restricted from working in a position that "required accurate identification of colored train signals" (Dkt. #25-3).

Many of Defendant's employees were affected by its Medical Rules. On February 19, 2016, a putative class of Defendant's current and former employees filed a class action lawsuit (the "*Harris* class"), asserting that Defendant discriminated against them because of their disabilities. *See Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). On February 5, 2019, the *Harris* class was certified and defined as follows: "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014, until the final resolution of this action." *Id.* at 628. Then, on March 24, 2020, the Eight Circuit reversed the *Harris* class certification for lack of commonality. *Harris v. Union Pac. RR. Co.*, 953 F.3d 1030, 1032 (8th Cir. 2020).

After the *Harris* class decertification, Plaintiff filed an EEOC charge of discrimination and received a letter informing him of his right to sue (Dkt. #25-4; Dkt. #25-6). On January 20, 2025,

2

Plaintiff filed this action, complaining of Defendant's violations of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*. (the "ADA") (Dkt. #1).[1] Defendant moved to dismiss Plaintiff's Complaint as time-barred (Dkt. #15). Ultimately, the Court accepted Defendant's arguments, finding that Plaintiff was only entitled to the tolling period created by the *Harris* class until February 5, 2019, and dismissed Plaintiff's untimely claims under Rule 12(b)(6) (Dkt. #47).[2]

On November 28, 2025, Plaintiff filed the instant Motion, through which he asks the Court to reconsider its November 3 Order and find that that the narrowed *Harris* class definition, as certified, included him (Dkt. #48). Specifically, Plaintiff argues the Court misconstrued Plaintiff's argument and misapplied *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313 (5th Cir. 2024) (Dkt. #48 at p. 1). On December 11, 2025, Defendant responded (Dkt. #49). On December 23, 2025, Plaintiff replied (Dkt. #50).[3] The Motion is now ripe for adjudication.

## LEGAL STANDARD

A motion seeking to reconsider a final judgment that is filed within twenty-eight days of the judgment is considered under Federal Rule of Civil Procedure 59(e). *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *Milazzo v. Young*, No. 6:11-cv-350-JKG, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012). This type of motion "calls into question the correctness of a

---

[1] On March 4, 2025, Plaintiff filed his Second Amended Complaint (Dkt. #12). On July 24, 2025, Plaintiff filed his Third Amended Complaint (the "Complaint") (Dkt. #25).

[2] Specifically, in the November 3 Order, the Court determined Plaintiff was excluded from the narrowed *Harris* class definition as certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his ADA claims were only tolled until February 5, 2019. *Harris*, 329 F.R.D. at 628; *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117. However, Plaintiff did not file his Charge of Discrimination seeking administrative relief under the ADA until January 31, 2020, which was 60 days too late (Dkt. #25-4).

[3] Local Rule CV-7(f) provides that "a party who has filed an opposed motion may serve and file a reply brief responding to the issues raised in the response within seven days from the date the response is served." LOCAL RULE CV-7(f). Here, Plaintiff's replied more than seven days after the date Defendant responded. Despite it being untimely, the Court considered Plaintiff's Reply.

26-40211.560

judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (internal quotation marks omitted) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). Here, Plaintiff filed their Motion for Reconsideration within twenty-eight days. Accordingly, the Court analyzes the motion under Rule 59(e).

A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir 1990)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Relief under Rule 59(e) is also appropriate when there is an intervening change in the controlling law." *Milazzo*, 2012 WL 1867099, at *1 (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479).

## ANALYSIS

Plaintiff urges the Court to reconsider its November 3 Order and find that he was a member of the narrowed *Harris* class, as certified on February 5, 2019 (Dkt. #48). The Court begins its analysis by noting that Plaintiff does not present any newly discovered evidence or any arguments that were previously unavailable for the Court to consider. Instead, Plaintiff argues the Court misconstrued Plaintiff's argument and misapplied *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313 (5th Cir. 2024) (Dkt. #48 at p. 1).

Again, the certified *Harris* class, was defined as follows: "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time

4

from September 18, 2014, until the final resolution of this action." 329 F.R.D. at 628. In his Motion, Plaintiff disputes the Court's interpretation of the term "fitness-for-duty examination," arguing that the Court incorrectly determined that Plaintiff's fitness-for-duty examination took place on just one day, September 5, 2014 (Dkt. #48 at pp. 2–3). In his view, the September 5 Test, the secondary color vision test Plaintiff failed, was not the *entire* "fitness-for-duty examination," rather, the fitness-for-duty examination was Defendant's "overall process of evaluating and assessing his fitness for duty" (Dkt. #48 at p. 2 (emphasis added)).

Plaintiff argues this examination or *process* did include the September 5 Test, but it also included the HMS department's "receipt and review of the test results along with other information, such as [Plaintiff's] essential job functions, his ten-year history of correctly identifying colored train signals, and [] whether reasonable accommodations might allow [Plaintiff] to continue working as a conductor" (Dkt. #48 at p. 2). According to Plaintiff, "because HMS did not reach a decision until September 25, 2014, it is *plausible* that its fitness-for-duty examination took place, in part if not entirely, after September 18, 2014" (Dkt. #48 at p. 3 (emphasis added)).

A similar argument was made in Plaintiff's response to Defendant's motion to dismiss (*Compare* Dkt. #17 at pp. 1, 8–10, *with* Dkt. #48 at p. 3). In his response, Plaintiff argued "the term 'fitness for duty examination' refers to more than just medical testing" and "it is clear that [Plaintiff] was subject to a fitness-for-duty examination, in whole or in part, on or after September 18, 2014" (Dkt. #17 at pp. 1, 8–10). The Court understood Plaintiff's argument and relayed it as such in the November 3 Order (Dkt. #47 at p. 11 ("Plaintiff argues the determination was made by Defendant's Health and Medical Services over a period of time.")).

5

Although Plaintiff rehashes the same argument through the instant Motion, he does not cite to any new legal authority (Dkt. #48). Instead, Plaintiff takes issue with the Court's reliance on *Zaragoza* in finding that the September 5 Test was the *entire* "fitness-for-duty examination" (Dkt. 48 at p. 4). Plaintiff argues that in *Zaragoza*, the Fifth Circuit did not need to address the whether Defendant's "fitness for duty examination" included other "subsequent events" (Dkt. #48 at p. 4). The Court agrees. In *Zaragoza*, the secondary color vision test administered to the plaintiff occurred after September 18, 2024, meaning the Fifth Circuit did not need to decide whether the fitness-for-duty examination was the secondary color vision test, alone, or some "overall process" as Plaintiff suggests. However, this determination does not change the Court's analysis or the Court's ruling.

In Plaintiff's Complaint, Plaintiff alleges the following: (1) Defendant "had and relied on the test results from the September 5, 2014 test when it made the employment *decisions* complained herein"—namely, the *decisions* to temporarily and permanently remove Plaintiff from his conductor position (Dkt. #25 at ¶ 25 (emphasis added)); and (2) "[b]ased on [Plaintiff]'s vision tests, up to and including the September 5, 2014 test, [Defendant] had in its possession documents indicating to it that [Plaintiff] was substantially impaired with respect to the major life activities of seeing and seeing in color" (Dkt. #25 at ¶ 25).

The Court turns to Defendant's Medical Rules, which explains that a evaluations completed by HMS may include: "(1) regulatory medical certification requirements; (2) drug screen; (3) medical, psychological, and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS" (Dkt. #25-1 at p. 4). Assuming Plaintiff's argument is true, that the fitness-for-duty examination was the

"overall process of evaluating and assessing his fitness for duty," then it *may* be true that the examination included the September 5 Test and continued past September 18, 2014, but Plaintiff did not allege that Defendant took any of these enumerated actions after September 18, 2014, in his Complaint (Dkt. #48 at p. 2). In fact, Plaintiff did not assert that Defendant took *any* action after the September 5 Test, except for notifying him of its fitness-for-duty decisions—that he was temporarily removed from his position on September 8, 2014, and that he was permanently removed from his position effective September 25, 2014 (*See* Dkt. #25).[4] Moreover, Plaintiff does not provide the Court with any newly discovered evidence suggesting Defendant continued its evaluation, as defined by Defendant's Medical Rules, past September 18, 2014. As such, any contention, now, that the fitness-for-duty examination may have taken place, in part or entirely, after September 18, 2014, is hypothetical.

Accordingly, the Court's ruling in its November 3 Order stands. Plaintiff was not a member of the narrowed *Harris* class definition, as certified on February 5, 2019. 329 F.R.D. at 628. Therefore, his ADA claims were only tolled until February 5, 2019. *Harris*, 329 F.R.D. at 628; *see also Am. Pipe*, 414 U.S. at 554. As a result, Plaintiff's 300-day window to seek the proper administrative remedies for this cause of action closed on December 2, 2019. *See* 42 U.S.C. § 12117.

---

[4]  In his response to Defendant's motion to dismiss, Plaintiff did argue the following: "[t]he record does not indicate when HMS got involved and began its examination regarding [Plaintiff's] fitness for duty, but it is a certainty that critical parts of the fitness-for-duty examination (such as the most important part, a *final determination*) took place after September 18, 2014" (Dkt. #17 at p. 10 (emphasis added)). Here, Plaintiff seemingly argued that Defendant's final determination was a *critical part* of the fitness-for-duty examination. However, Defendant's Medical Rules refers to its "final determination" as HMS's "Fitness-for-Duty Decision" (Dkt. #25-1 at p. 7). Specifically, Defendant's Medical Rules include a section titled "Health and Medical Services Fitness-for-Duty Decisions," which notes that *after* a Fitness-for-Duty evaluation is complete, HMS will "determine if the employee/applicant is medically and functionally able to safely perform his/her job and make the following designations: Fit for Duty, Fit For Duty – with Restrictions, or Not Fit for Duty" (Dkt #25-1 at p. 7 (citation modified)). It is clear, Defendant's "fitness-for-duty decision" comes *after* Defendant's "fitness-for-duty evaluation." As such, a final determination is not the same as an examination. Plaintiff makes no argument in the instant Motion asking the Court to equate a "fitness-for-duty decision" with a "fitness-for-duty examination" (*See* Dkt. #48). Nor can he.

26-40211.564

Because Plaintiff did not file his Charge of Discrimination seeking administrative relief until January 31, 2020, Plaintiff's disparate treatment claim under the ADA is time-barred.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Reconsideration of the Order Dismissing this Case (Dkt. #48) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 27th day of April, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

8