NO. 26-40211

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Jeffrey Todd Cooley,
Plaintiff-Appellant

v.

Union Pacific Railroad Company,
Defendant-Appellee

On Appeal from
United States District Court
for the Eastern District of Texas, Sherman Division

4:25-CV-56

## BRIEF OF APPELLEE UNION PACIFIC RAILROAD COMPANY

SUBMITTED BY:

Jimmie L. Pinkham III
Scott P. Moore
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
Telephone: (402) 344-0500
Facsimile: (402) 344-0588

COUNSEL FOR DEFENDANT-APPELLEE.

## CERTIFICATE OF INTERESTED PERSONS

1.     Jeffrey Todd Cooley, Plaintiff-Appellant v. Union Pacific Railroad Company, Defendant-Appellee, Appeal No. 26-40211.

2.     The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

a.  Union Pacific Railroad Company, Appellee.

b.  Union Pacific Corporation, a publicly traded corporation and the sole parent of Appellee. No parent corporation or any publicly held corporation owns 10% or more of Union Pacific Corporation's stock.

c.  Jimmie L. Pinkham III and Scott P. Moore of Baird Holm, LLP, Counsel for Appellee.

d.  Jeffrey Todd Cooley, Appellant.

e.  Donald E. Uloth of Law Office of Donald E. Uloth, Counsel for Appellant.

/s/ Jimmie L. Pinkham III
Attorney of Record for Appellee

2

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to 5th CIR. R. 28.2.4, Union Pacific respectfully requests twenty minutes of oral argument. While the legal issues addressed herein are relatively straightforward, oral argument will assist this Court in addressing a question with significance beyond this case: class-action tolling principles related to an unambiguously narrowed class definition.

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES.................................................................7

STATEMENT OF THE CASE ...............................................................8

   I. Cooley's Failed 2014 Regulatory Color Vision Tests. .....................8

   II. Cooley's 2014 Work Restrictions. ................................................8

   III. Procedural History. ....................................................................9

SUMMARY OF THE ARGUMENT .....................................................11

ARGUMENT...........................................................................................12

   I. Cooley's Third Amended Complaint Demonstrates that He was Unambiguously Excluded from the Revised *Harris* Class Definition...............................................................................12

     A. The applicable statute of limitations. .....................................12

     B. Cooley cannot create ambiguity in the revised *Harris* class definition. ...........................................................13

       *i. Evaluation" and "examination" are not interchangeable.............................................................14*

       *ii. Cooley merely alleges that Union Pacific made a fitness-for-duty decision after September 5, 2014............17*

       *iii. There is no reasonable basis to interpret fitness-for-duty "examination" to include a review of documents provided by an employee. ...............................................18*

       *iv. Cooley's ordinary-meaning argument ignores context and dictionary definitions...................................................19*

     C. Cooley's Third Amended Complaint forecloses his tolling argument and fails to support his unreasonable interpretation of the revised *Harris* class definition.................................................................22

CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
998 F.3d 190 (5th Cir. 2021)........................................................23

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974)....................................................................14

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983)....................................................................14

*DeFries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024) ............................................... *passim*

*Harris et al. v. Union Pacific Railroad Company*.
ROA.237-238, ¶¶ 38-45............................................................. *passim*

*Harris v. Union Pac. R.R. Co.*,
329 F.R.D. 616 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020)............................................................................... 11, 15

*Jaso v. The Coca Cola Co.*,
435 F. App'x 346 (5th Cir. 2011)............................................... 15, 23

*Melgar v. T.B. Butler Publ'g Co., Inc.*,
931 F.3d 375 (5th Cir. 2019)............................................................13

*Zaragoza v. Union Pac. R.R. Co.*,
112 F.4th 313 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1428, 221 L. Ed. 2d 553 (2025) ........................................................14

**Statutes**

42 U.S.C. § 2000e-5(e)(1).................................................................13

## Other Authorities

49 C.F.R. § 242.117(h)(3) and Appendix D to Part 242 ........................... 17

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 69-70 (2012) ................................................................. 20

Rule 12(b)(6) .............................................................................. 12, 26

## STATEMENT OF THE ISSUES

1.      Whether, based on the pleaded allegations and judicially noticeable facts, Cooley was unambiguously excluded from the *Harris* class definition, as it was revised and narrowed on February 5, 2019.

## STATEMENT OF THE CASE

### I.    Cooley's Failed 2014 Regulatory Color Vision Tests.

On August 28, 2014, Cooley failed the Ishihara color-vision test as part of his regulation-required Federal Railroad Administration ("FRA") conductor recertification. ROA.233, ¶¶ 17. On September 5, 2014, Cooley failed a secondary color vision field test, also part of the FRA's regulatory protocol for conductors. ROA.233-234, ¶¶ 18, 23. Based upon the Ishihara and color vision field test results, Union Pacific prohibited Cooley from working "in a position requiring accurate color signal recognition" starting on September 5, 2014. ROA.235, ¶¶ 25, 27.

### II.    Cooley's 2014 Work Restrictions.

When Cooley was initially prohibited from working as a conductor, he was placed on a temporary productive work plan. ROA.235, ¶ 27. Shortly thereafter, on September 25, 2014, Union Pacific placed permanent restrictions on Cooley. ROA.256-257. Those restrictions maintained the initial restriction prohibiting Cooley from working "jobs that require accurate identification of colored train signals." ROA.256-257. At the time of his permanent restrictions, Union Pacific's Chief Medical Officer and medical examiner, Dr. John Holland, also informed

Cooley that "[h]e does not meet the FRA medical standards for vision." ROA.256.

### III.   Procedural History.

More than five years later, Cooley dual filed a charge of discrimination with the EEOC and the Texas Workforce Commission – Civil Rights Division on January 21, 2020. ROA.263-4. Then he filed his initial complaint in the United States District Court on January 20, 2025, more than a decade after her was removed from service. ROA.8. After Union Pacific moved to dismiss the initial complaint, Cooley amended his complaint. ROA.42; ROA.71. Union Pacific moved to dismiss the amended complaint on March 18, 2025. ROA.124. In opposition to Union Pacific's motion to dismiss, Cooley proposed a second amended complaint. ROA.150-193.

Cooley filed his Third Amended Complaint on July 24, 2025. ROA.230. In his Third Amended Complaint, Cooley alleged that his claims are not barred by the statute of limitations because of a class action lawsuit, *Harris et al. v. Union Pacific Railroad Company*. ROA.237-238, ¶¶ 38-45. The initial putative class in Harris was defined as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 621 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020). On February 5, 2019, the District Court certified a narrower class:

> All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

*Id.* at 628. Cooley's Third Amended Complaint asserts that he was a putative class member under both class definitions. ROA.237, ¶¶ 39-40.

On November 3, 2025, the District Court granted Union Pacific's March 18, 2025 motion to dismiss. ROA.531. The District Court considered Plaintiff's Third Amended Complaint in "making its determinations on the issue raised" in the motion to dismiss. ROA.531. Then, Cooley moved for reconsideration, which the District Court denied on April 27, 2026.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's dismissal of Cooley's claims under Rule 12(b)(6). The District Court correctly held that Cooley's claims are time-barred because he was unambiguously excluded from the revised *Harris* class definition on February 5, 2019.

Cooley was *unambiguously* excluded from the revised *Harris* class definition based on the intentional and exact change in language between the initial class definition and the revised definition. Specifically, class counsel deliberately elected to narrow the class from "individuals removed from service *as a result of a fitness-for-duty evaluation*" to "individuals *subject to a fitness-for-duty examination*." And, the revised definition explicitly included the temporal requirement that the fitness-for-duty examination had to occur *after* September 18, 2014.

Here, the Third Amended Complaint makes clear that Cooley was *subject to* a fitness-for-duty *examination*—the color-vision field test—on September 5, 2014. Cooley's Third Amended Complaint, including the attached and incorporated Union Pacific's Medical Rules, foreclose any argument that Cooley was not unambiguously excluded from the revised *Harris* class definition.

11

# <u>ARGUMENT</u>

I. **Cooley's Third Amended Complaint Demonstrates that He was Unambiguously Excluded from the Revised *Harris* Class Definition.**

The District Court properly held that Cooley was unambiguously excluded from the revised *Harris* class definition on February 5, 2019 because he was "subject to a fitness for duty examination as a result of a reportable health event" on September 5, 2014. ROA.541. Because Cooley's fitness for duty examination occurred outside the express temporal paraments of the revised class definition, he was excluded from the class and any tolling of his claims ceased of February 5, 2019. Cooley's January 31, 2020 Charge of Discrimination was therefore untimely.

**A. The applicable statute of limitations.**

Under the ADA, an employee must file a charge of discrimination within 300 days of the alleged discrimination to exhaust their administrative remedies. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 (5th Cir. 2019) (citing 42 U.S.C. § 2000e-5(e)(1)). The commencement of a class action suspends the statute of limitations until class certification is denied or the individual is unambiguously excluded

from the class definition. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983); *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 321 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1428, 221 L. Ed. 2d 553 (2025).

In determining whether an individual was excluded from a class definition for purposes of tolling, this Court held that "anything short of unambiguous narrowing would undermine the balance contemplated by the Supreme Court." *Zaragoza*, 112 F.4th at 322 (quoting *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091 (9th Cir. 2024). Thus, courts must assess the individual's claims and determine whether they were "unambiguously excluded" from the class.

### B. Cooley cannot create ambiguity in the revised *Harris* class definition.

Put simply, Cooley was unambiguously excluded from the revised *Harris* class definition. The February 5, 2019 class certification order narrowed the class to:

> All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time *from September 18, 2014* until the final resolution of this action.

*Harris*, 329 F.R.D. 616, 628 (D. Neb. 2019) *rev'd*, 953 F.3d 1030 (8th Cir. 2020) (emphasis added). Thus, to fall within the operative *Harris* class definition, Cooley must have been *subject* to a fitness-for-duty *examination* on or after *September 18, 2014*. He was not.

Cooley was not subject to a fitness-for-duty *examination* as a result of a reportable health event on or after September 18, 2014; his examination—the color vision field test—occurred on September 5, 2014. ROA.235, ¶¶ 25, 27; ROA.256. Cooley's rejoinder to Union Pacific's statute of limitations defense is foreclosed by the allegations in his own complaint, including the documents attached thereto. *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011). Cooley cannot ignore the specific text of the narrowed *Harris* class definition while simultaneously arguing for ambiguity.

### i. *"Evaluation" and "examination" are not interchangeable.*

Cooley conflates "evaluation" and "examination" in an effort to avail himself of *American Pipe* tolling. But by doing so, Cooley ignores—and asks this Court to ignore—the original *Harris* class definition, Union Pacific's Medical Rules, which were incorporated by reference into the class definition, and his own Charge.

First, the plaintiffs in *Harris* intentionally chose the language in the narrowed class definition—it was not a mistake. See *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1102 (9th Cir. 2024), *cert. denied sub nom. Union Pac. R. Co. v. DeFries*, No. 24-630, 2025 WL 889139 (U.S. Mar. 24, 2025). The original class definition used the word "evaluation," but the plaintiffs in *Harris* chose to change it to "examination." *Id*. Cooley asks this Court to turn a blind eye to that change, but as explained below, "examinations" are distinct from "evaluations" in the context of Union Pacific's Medical Rules ("Medical Rules"). Those terms are neither synonymous nor interchangeable.

Second, Union Pacific's Medical Rules ("Medical Rules"), which were incorporated by reference into the class definition, unambiguously refer to "examinations" as being *part* of a fitness-for-duty evaluation. *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1105 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1426, 221 L. Ed. 2d 553 (2025) (noting that the medical rules were incorporated by reference into the class definition); ROA.245. The Medical Rules note that employees and applicants are responsible for "undergoing a Fitness-For-Duty Evaluation, including all medical tests, examinations, and evaluations deemed necessary by various

15

governmental agencies and HMS." ROA.243. Further, the Medical Rules

explicitly describe Fitness-For-Duty Evaluations as:

> Evaluations completed by Health and Medical Services (HMS) may include, but are not limited to *various components* such as: (1) regulatory medical certification requirements; (2) drug screen; (3) medical. psychological and/or functional evaluations, (4) obtaining additional medical records for review by HMS, and (5) other information as deemed necessary by HMS.

ROA.245 (emphasis added). Here, the examination Cooley failed on

September 5, 2014—the color-vision field test—was a "regulatory

medical certification requirement" for conductors who failed the first

color-vision test. ROA.233, ¶¶ 18-19, 23; ROA.256; *See* 49 C.F.R. §

242.117(h)(3) and Appendix D to Part 242. Whether or not Union Pacific

reviewed medical records or other information after September 5, 2014,

that review is not an examination and is thus not included in the revised

*Harris* class definition.

Finally, Cooley's own Charge, filed January 31, 2020, explicitly

refers only to "examinations:"

> [S]ubjecting employees to so-called "medical examinations" by the railroad's Health & Medical Services and using such examinations to take the employees out of service and/or medically disqualify them; [...]

ROA.264. Thus, Cooley cannot claim now that there is ambiguity in the revised *Harris* class definition when he previously relied upon that exact terminology and only referenced Union Pacific's "color vision field test" in the same Charge. ROA.264 ("I was removed from my job after I failed Union Pacific's color vision field test").

> ii. *Cooley merely alleges that Union Pacific made a fitness-for-duty* <u>decision</u> *after September 5, 2014.*

Cooley argues without support in his pleadings that "Union Pacific took other actions that were also part of his fitness-for-duty examination, such as an examination of his work and safety records, and exploring reasonable accommodations." ECF No. 18, p. 20. Cooley's pleadings tell a different story: the Third Amended Complaint merely alleges that Cooley received a letter detailing Union Pacific's Chief Medical Officer's decision to restrict Cooley based upon his failed color vision field tests. ROA.235, ¶ 28. While documents were reviewed in coming to this decision, the documents attached to the pleadings confirm that the only documents reviewed were Cooley's color vision test results, including the September 5, 2014 CVFT results. ROA.256. Nothing in the pleadings support Cooley's assertion that anyone conducted an "examination of his work and safety records."

Further, the pleadings do not support any assertion that "exploring reasonable accommodations" is part of a fitness-for-duty examination *or* evaluation. Instead, whether accommodations can be made is resolved as part of or after the fitness-for-duty *decision*, not as part of any fitness-for-duty evaluation or examination. ROA.248. Thus, Cooley conflates fitness-for-duty *evaluation*, *examination*, and *decision*, but they are not synonymous. Rather, Cooley was subjected to an examination on September 5, 2014, as part of a broader evaluation, which ultimately resulted in a decision.

> iii. *There is no reasonable basis to interpret fitness-for-duty "examination" to include a review of documents provided by an employee.*

In the same vein as Cooley's unavailing argument that "examination" and "evaluation" are interchangeable, he also contends that a fitness-for-duty "examination" includes a review of documentation. There is no reasonable basis for this interpretation of fitness-for-duty "examination." As noted above in Section I(A), a fitness-for-duty *evaluation* can include several components, with examinations being one of them. ROA.299-300. A fitness-for-duty evaluation can also include—as a separate component from an "examination"—"obtaining additional

18

medical records for review by HMS." ROA.301. Thus, Cooley continues to broadly misinterpret "evaluation" to be synonymous with "examination," despite the distinction made within the plain language of the Medical Rules and the class definition being revised from one to the other. *See DeFries*, 104 F.4th at 1102.

    *iv.    Cooley's ordinary-meaning argument ignores context and dictionary definitions.*

Cooley relies heavily on the ordinary-meaning rule, but this reliance ignores that Union Pacific's Medical Rules were incorporated by reference into the class definition at issue. *DeFries*, 104 F.4th at 1105 (noting that the Medical Rules were incorporated by reference into the class definition); ROA.245. Cooley's cited text supports a more contextual reading of "fitness-for-duty examination" than Cooley strives for here:

> One should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise. Sometimes there *is* reason to think otherwise, which ordinarily comes from context. And it should not be forgotten that not all colloquial meanings appropriate to particular contexts are to be found in the dictionary

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 69-70 (2012). Context is important. As noted in Section I(B)(i), *supra*, the

Medical Rules unambiguously refer to "examinations" as being *part* of a fitness-for-duty broader evaluation, not one in the same.

Cooley's reliance on case law using the word "examination" to refer to an examination of the record in the judicial context fares no better. First, it is an inapt comparison, given the differences between examining the record and subjecting someone to an "examination." Further, here, the medical rules provide context for the fitness-for-duty terminology that is absent in Cooley's case law. Second, Cooley improperly seeks to use this hasty comparison to surmise that "evaluation" and "examination" are synonymous. He leaps to this conclusion without citing a dictionary definition for either word; he simply invents his own definition. ECF No. 18, p. 21.

Merriam-Webster has a medical definition for "examination:" "[T]he act or process of inspecting or testing for evidence of disease or abnormality." *Examination*, Merriam-Webster, https://www.merriam-webster.com/dictionary/examination (last visited July 9, 2026). In contrast, Merriam-Webster has no medical definition of "evaluation," but broadly defines it as a "determination of the value, nature, character, or quality of something or someone." *Evaluation*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/evaluation (last visited July 9, 2026).

Collins Dictionary also differentiates between the two terms. "Evaluation" is broadly defined as "the process of evaluating something" or, in the medical sense, "a diagnosis or diagnostic study of a physical or mental condition." *Evaluation*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/evaluation (last visited July 9, 2026). Conversely, "examination" is defined as "a formal test that you take to show your knowledge or ability in a particular subject, or to obtain a qualification" or "an examining or being examined; investigation; inspection; checkup; scrutiny; inquiry; testing." Examination, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/examination (last visited July 9, 2026).

Ultimately, neither context nor dictionary definitions surrounding "fitness-for-duty examination" support a synonymous reading with "fitness-for-duty evaluation." Under the Medical Rules and dictionary definitions, a fitness-for-duty "evaluation" is necessarily broader than

21

fitness-for-duty "examination." Cooley's vacillation between "assessment," "evaluation," and "examination" is telling.

### C. Cooley's Third Amended Complaint forecloses his tolling argument and fails to support his unreasonable interpretation of the revised *Harris* class definition.

While Cooley correctly states this Court's standard for dismissal based on statute of limitations, he seeks to apply it to far-fetched interpretations of a class definition in an effort to create ambiguity where there is none. The appropriate legal standard is:

> [D]ismissal for failure to state a claim based on the statute of limitations defense should be granted only when the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint.

*Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021) (quoting *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011)). Here, Cooley's detailed Third Amended Complaint, together with the attachments thereto, foreclose any argument that Cooley was not unambiguously excluded from the revised *Harris* class definition.

Cooley implores the Court to use the *Jaso* legal standard to accept *any* interpretation of the revised *Harris* class definition as reasonable. ECF No. 18, pp. 9-10. But Cooley's argument that the Court should ignore

22

the intentional changes in the class definition is anything but reasonable. Cooley acknowledges that the *Harris* class definition was narrowed, although he attempts to play down the changes as being only slightly different. ROA.237, ¶ 40. The fact is that class counsel chose to narrow to class from individuals removed from service as a result of a fitness-for-duty *evaluation* to individuals *subject to* a fitness-for-duty *examination*. *DeFries*, 104 F.4th at 1102.

Further, Cooley's focus in his Third Amended Complaint on color-vision field tests makes clear that Cooley takes issue with the field test itself, not a review of records or some other aspect of a broader fitness-for-duty *evaluation*. And Cooley's attempt to re-interpret *DeFries* to agree with his misreading of "fitness-for-duty examination" belies the point. ECF No. 14, p. 27. The "examination" *DeFries* refers to is the color-vision field test, the "fitness-for-duty examination" individuals are subject to if they fail the Ishihara test. *Id.* at 1101 (describing DeFries' failure of the initial Ishihara test, which resulted in Union Pacific requiring him to take the new color-vision field test).

Tellingly, Cooley includes a block quotation from *DeFries* to support his argument, but he omits a key sentence that follows it: "Failure of an

Ishihara test is exactly the sort of 'recent event' that the company would want to know about under its 'reportable health events' policy." *Id*. at 1106. Thus, if failure of an Ishihara test is a "reportable health event," then the next step in the color vision program—the color vision field test—is a fitness-for-duty examination.

Cooley's Third Amended Complaint, including its attachments, contains all the information necessary for the Court to affirm that Cooley was unambiguously excluded from the revised *Harris* class definition. Cooley was pulled from service as a conductor on September 5, 2014 after failing the Ishihara test and the color-vision field test, then he was placed on a temporary productive work plan. ROA.233-235, ¶¶ 17-18, 23, 25, 27. That same day, he was restricted from working "jobs that require accurate identification of colored train signals." ROA.235, ¶¶ 25, 27. That restriction was maintained when Union Pacific's medical examiner determined that "[Cooley] does not meet the FRA medical standards for vision" on September 25, 2014. ROA.256. Nothing in the Third Amended Complaint supports Cooley's unreasonable misinterpretation of the revised *Harris* class definition.

## CONCLUSION

Based on the foregoing, Union Pacific respectfully requests that the Court affirm the District Court's dismissal under Rule 12(b)(6). Cooley should not be permitted to resurrect his untimely claim related to his 2014 fitness-for-duty *examination* (CVFT) based upon an unreasonable interpretation of the revised *Harris* class definition.

Respectfully submitted,

UNION PACIFIC RAILROAD COMPANY,
Appellee,

BY:  */s/ Jimmie L. Pinkham III*
Scott P. Moore (NE #20752)
Jimmie L. Pinkham III (NE #25534)
of  BAIRD HOLM LLP
1700 Farnam St. Ste. 1500
Omaha, NE  68102-2068
Phone: 402-344-0500
Email: spmoore@bairdholm.com
Email: jpinkham@bairdholm.com

ATTORNEY FOR APPELLEE
UNION PACIFIC RAILROAD CO.

## CERTIFICATE OF SERVICE

I certify that the foregoing brief was electronically filed on the 22nd day of July 2026, using the court's CM/ECF system which will provide a notice of electronic filing to counsel of record.

/s/ Jimmie L. Pinkham III
Jimmie L. Pinkham III (NE #25534)

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 4,006 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2602 Build 16.0.19725.20126) 64-bit in 14-point Century Schoolbook font.

/s/Jimmie L. Pinkham III
Jimmie L. Pinkham III (NE #25534)

7649848.3