# No. 26-40211

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Jeffrey Todd Cooley,

Plaintiff - Appellant

v.

Union Pacific Railroad Company,

Defendant - Appellee

## On Appeal from
United States District Court for the Eastern District of Texas

4:25-CV-56

## REPLY BRIEF OF APPELLANT JEFFREY TODD COOLEY

SUBMITTED BY:

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Appellant,
Jeffrey Todd Cooley

# TABLE OF CONTENTS

<u>Contents</u> <span style="float:right"><u>Page(s)</u></span>

Table of Contents………………………………………………………………………….... ii

Table of Authorities………………………………………………………………………… iii

Introduction ………………………………………………………………………….....… 1

Argument ……………………………………………………………………………….. 1

    A.   The district court adopted a slightly revised version of the initial class definition …………………………………………………… 1

    B.   The Medical Rules were not incorporated by reference into the revised definition …………………………………………………….. 4

    C.   The use of the word "examinations" in the Medical Rules is not dispositive as to "examination" in the revised definition …………… 5

    D.   Considering reasonable accommodations is part of the fitness-for-duty assessment process, not the fitness-for-duty determination ………….. 6

    E.   Cooley's fitness-for-duty examination could have continued after September 18, 2014 ………………………………………………….. 7

    F.   Dictionary definitions arguably support both sides, which suggests ambiguity ……………………………………………………… 8

    G.   *DeFries* makes it clear that for color-vision plaintiffs, the fitness-for-duty examination continues after color-vision testing ……………….. 9

    H.   Cooley's failure to allege that specific actions were taken is not the same as admitting they did not happen ……………………………… 10

Conclusion …………………………………………………………………………………12

Certificate of Service ……………………………………………………………………….12

Certificate of Compliance …………………………………………………………………..13

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page(s)</u>

DeFries v. Union Pacific Railroad Co.,
      104 F.4th 1091 (9th Cir. 2024) …………………………………………4, 9-10

Goodman v. Praxair, Inc.,
      494 F.3d 458 (4th Cir. 2007) …………………………………………………...11

Harris v. Union Pacific Railroad Company,
      329 F.R.D. 616 (D. Neb. Feb. 5, 2019) ……………………………… *passim*

White v. U.S. Corr., L.L.C.,
      996 F.3d 302 (5th Cir. 2021) …………………………………………………... 11

Zaragoza v. Union Pacific Railroad Co.,
      112 F.4th 313 (5th Cir. 2024) ………………………………………………… 1, 9

<u>Rules and Statutes</u>

Fed. R. Civ. P. 12(b)(6)…………………………………………………………..… 11

# INTRODUCTION

The question in this case is not whether the Third Amended Complaint affirmatively alleges that Cooley's fitness-for-duty examination continued past September 18, 2014. Rather, the question is whether the complaint affirmatively alleges that all aspects of his fitness-for-duty examination took place before September 18, 2014. It does not.

Appellee's Brief (ECF No. 20) shows that reasonable minds can differ about the meaning of the term "fitness-for-duty examination," but this ambiguity favors Appellant, not Appellee. Cooley's allegations do not foreclose the possibility that his fitness-for-duty examination may have continued beyond, and probably did continue beyond, September 18, 2014. Thus, Cooley was not unambiguously excluded from the *Harris* class by the revised definition, and his case should not have been dismissed.

# ARGUMENT

**A.    The district court adopted a slightly revised version of the initial class definition.**

In *Zaragoza v. Union Pacific Railroad Company*, 112 F.4th 313 (5th Cir. 2024), this Court said: "in August 2018, the *Harris* plaintiffs moved for class certification under a slightly revised class definition." *Id.* at 317. Union Pacific disputes characterizing the revision as slight, Appellee's Brief at 23, but there is ample evidence supporting this Court's choice of words.

First, the briefing in *Harris* supports this description. In *Harris*, the plaintiffs filed two briefs in support of their motion for class certification,[1] and Union Pacific filed one opposing certification.[2] None of the briefs discuss whether or how using "examination" in place of "evaluation" would change the composition of the class. Rather, the briefs on both sides focused on identifying persons affected by Union Pacific's Medical Rules, which required persons who had experienced a "reportable health event" to undergo a process intended to determine their fitness for duty.

To describe this process, both sides used the words "evaluation" and "examination" interchangeably. For example, Union Pacific's brief opposing class certification states: "An employee who is seeking to transfer into a safety-sensitive job or returning to work after an absence of 12 months or longer must also submit to a FFD examination, which may reveal an RHE." Defendant's Brief in Opposition to Plaintiffs' Motion for Class Certification at p. 19, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-00381 (D. Neb. Oct. 2, 2018), ECF No. 259. *See also*

---

[1] *See* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-00381 (D. Neb. Aug. 17, 2018), ECF No. 241, and Plaintiffs' Reply in Support of Motion for Class Certification, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-00381 (D. Neb. Nov. 11, 2018), ECF No. 289.

[2] *See* Defendant's Brief in Opposition to Plaintiffs' Motion for Class Certification, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-00381 (D. Neb. Oct. 2, 2018), ECF No. 259.

Plaintiffs' Memorandum of Law in Support of Motion for Class Certification at p. 15, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-00381 (D. Neb. Aug. 17, 2018), ECF No. 241. Furthermore, none of the briefing supports Union Pacific's current argument, that "examination" refers to a small part of the overall assessment, like an eye exam or a color-vision field test.

Second, the district court's opinion adopting the revised class definition also supports the conclusion that the definition was only slightly changed. As with the briefs, the district court's opinion does not say there was anything significant about the revised definition. To the contrary, the district court approved sending notice by U.S. mail to all persons on a class list that was generated based on the initial class definition. *Harris v. Union Pacific R.R. Co.*, 329 F.R.D. 616, 627-628 (D. Neb. 2019). The district court would not have approved sending notice to persons who matched the initial definition if the revised definition was substantially different; a materially-different definition would have necessitated a new class list.

Union Pacific's argument about the word change therefore fails to extinguish the possibility that "fitness-for-duty examination," as used in the revised class definition, has the same meaning as "fitness-for-duty evaluation" in the Medical Rules.

3

**B.    The Medical Rules were not incorporated by reference into the revised class definition.**

Union Pacific argues that the Medical Rules were incorporated by reference into the revised class definition. Appellee's Brief at 14-15. That is not entirely accurate; there is nothing in the district court's opinion incorporating the Medical Rules as a whole into the revised class definition.

The revised class definition does use the term "reportable health event," which is defined in the Medical Rules. ROA.252. In *DeFries v. Union Pacific R.R. Co.*, 104 F.4th 1091 (9th Cir. 2024), the Ninth Circuit said that the parties agreed "reportable health events" referred to the Medical Rules. *Id.* at 1105. However, based on this agreement concerning one term, the Court also stated that "Union Pacific's Medical Rules … were incorporated by reference into the class definition." *Id.*

The Ninth Circuit did not cite anything supporting this broad conclusion, and there is nothing supporting this conclusion in the district court's opinion adopting the revised class definition.

In its Brief, Union Pacific uses this inaccurate language from *DeFries* to bolster its proffered interpretation of the revised *Harris* class definition. Appellee's Brief at 15-16. More specifically, Union Pacific argues that "examinations" in the Medical Rules must have the same meaning as "examination" in the revised class definition, but its reasoning is flawed, as discussed below.

**C.**    **The use of the word "examinations" in the Medical Rules is not dispositive as to "examination" in the revised definition.**

In the Medical Rules, there is a sentence listing "examinations" as something that might be required as part of a fitness-for-duty evaluation. ROA.243. Based on this, Union Pacific argues that the term "fitness-for-duty examination" in the revised *Harris* class definition cannot refer to the broader process of determining fitness for duty, it can only refer to a smaller part of the process. Appellee's Brief at 15-16.

This argument overlooks the fact that the word "evaluations" also appears in the same sentence listing things that might be required during a fitness-for-duty evaluation. Union Pacific's reasoning would lead to the conclusion that "fitness-for-duty evaluation" cannot refer to the overall assessment process either. The problem, however, is that "Fitness-for-Duty Evaluation" is the very term Union Pacific uses in its Medical Rules to describe the overall process, so this conclusion would be wrong. *See* ROA.245.

Therefore, the use of the word "examinations" in the Medical Rules does not rule out the possibility that "fitness-for-duty examination" refers to the overall assessment process. Furthermore, as discussed in the next section, this process sometimes includes consideration of reasonable accommodations.

**D.    Considering reasonable accommodations is part of the fitness-for-duty assessment process, not the fitness-for-duty determination.**

The Medical Rules make it clear that in any case where work restrictions are imposed, the decision-makers must consider whether the employee is able to perform the essential job functions, with or without reasonable accommodations. This consideration is part of the fitness-for-duty assessment, not something that arises only later when making a fitness-for-duty determination.

The Medical Rules define "Fitness for Duty" as: "Ability to medically and functionally (including physical, mental, and or cognitive function) safely perform the functions of a job, *with or without reasonable accommodations* and meet medical standards established by regulatory agencies in accordance with federal and/or state laws." ROA.252 (emphasis added). By definition, reasonable accommodations must be considered, if at all, during the fitness-for-duty assessment process.

The Medical Rules also make it clear that a fitness-for-duty decision is made "[a]fter a Fitness-for-Duty evaluation is complete." ROA.248. This page of the Medical Rules acknowledges that if work restrictions are assigned, the company must know whether the restrictions can be accommodated. However, the reference to accommodations here on this page says nothing about when, or at what stage in the process, a determination concerning reasonable accommodations is made. Rather, that is addressed elsewhere in the Rules, in the discussion of fitness-for-

6

duty evaluations, which provide that the fitness-for-duty evaluation includes consideration of reasonable accommodations. ROA.242 and 252.

As stated in Cooley's opening brief, his Third Amended Complaint and the attachments thereto support a timeline in which Union Pacific first considered reasonable accommodations on or after September 25, 2014. In other words, the Third Amended Complaint alleges that Cooley was still undergoing a fitness-for-duty examination after September 18, 2014, which makes him a class member under the revised class definition.

**E.    Cooley's fitness-for-duty examination could have continued after September 18, 2014.**

According to the Medical Rules, reviewing relevant records would be considered part of a fitness-for-duty evaluation. Union Pacific confirmed this in *Harris*, in its brief opposing class certification. Union Pacific said its in-house doctors "do not perform an in-person physical examination of the employee, but rather review the appropriate medical records, which is an accepted method of conducting an FFD evaluation." Defendant's Brief in Opposition to Plaintiffs' Motion for Class Certification at 7-8, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-00381 (D. Neb. Oct. 2, 2018), ECF No. 259.

Because a fitness-for-duty *examination* is the same or similar to a fitness-for-duty *evaluation*, reviewing records would be part of Cooley's fitness-for-duty examination. From the allegations in the Third Amended Complaint, there is no

way of knowing when a decision-maker reviewed the test results of Cooley's September 5, 2014 color-vision field test, or other relevant records, such as those relating to Cooley's work history. Because the test results, and other records, might have been reviewed after on or after September 18, 2014, the allegations in the Third Amended Complaint do not foreclose Cooley's tolling argument.

**F.      Dictionary definitions arguably support both sides, which suggests ambiguity.**

The dictionary definitions referenced by Union Pacific show that "examination" has multiple meanings, and some of them support Cooley's proffered interpretation of "fitness-for-duty examination."

For example, in Merriam-Webster, the first definition is: "the act or process of examining: the state of being examined." "Examination," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/examination, (Accessed Aug. 10, 2026). This supports Cooley's argument that a fitness-for-duty examination is a process, and not just a single test or point in time during the process.

The same is true of the Collins Dictionary definition of "examination." It includes not only "a formal test," but also "an examining or being examined; investigation; inspection; checkup; scrutiny; inquiry; testing." Appellee's Brief at 21 (quoting Collins Dictionary). An "investigation," an "inquiry," or "scrutiny" of Cooley's work history, safety record, and medical documentation (all things that

8

could have continued after September 18, 2014) fit comfortably within the Collins Dictionary definition of "examination."

Dictionary definitions that support both parties' positions are proof of ambiguity, not unambiguous exclusion. Under *DeFries* and *Zaragoza*, this ambiguity must be resolved in Cooley's favor at the pleading stage, not against him.

**G.    *DeFries* makes it clear that for color-vision plaintiffs, the fitness-for-duty examination continues after color-vision testing.**

Cooley respectfully submits that Union Pacific's argument on this point is wrong.

The revised class definition consists of three components: (1) being "subject to a fitness-for-duty examination," (2) "as a result of a reportable health event," and (3) "at any time from September 18, 2014 until the final resolution of this action." *Harris*, 329 F.R.D. 616 at 628.

In *DeFries*, the first and third components were not in dispute. It was undisputed that the plaintiff had been subjected to a fitness-for-duty examination in in 2018 when Union Pacific put him through the recertification process required by federal safety regulations. *Id.* at 1101. There was therefore no reason to look into other aspects of his fitness-for-duty examination to determine what additional steps were taken as part of the examination after the plaintiff's color-vision field test

("CVFT"). Rather, the key fact issue in dispute concerned a different clause in the revised class definition, "reportable health event."

However, while the Court did not dwell on the additional steps taken after the CVFT, the Court did make it clear that the fitness-for-duty examination did not end once the CVFT was completed. There were other steps afterwards. After DeFries failed Union Pacific's new CVFT, the Light Cannon test, "[h]e was *then* routed into the fitness-for-duty program. Union Pacific's chief medical officer diagnosed him with a 'Color Vision Deficit' that the company found could not be accommodated." *Id.* at 1101 (emphasis added). The Court described this sequence of events again later in its opinion, stating: "Union Pacific automatically routes anyone who fails this FRA-required testing into a fitness-for-duty examination and labels them as having a 'Diagnosis' of 'Color Vision Deficit.'"

This makes it clear that, according to the Ninth Circuit, a fitness-for-duty examination continues after an employee fails the CVFT. Contrary to Union Pacific's claims in this case, Cooley's pleadings do not admit or concede that his examination ended as of September 5, 2014.

## H.     Cooley's failure to allege that specific actions were taken is not the same as admitting they did not happen.

Union Pacific's brief argues that Cooley's pleading is deficient because it fails to affirmatively allege that Union Pacific reviewed his work and safety records, or that it explored reasonable accommodations, as part of his fitness-for-

10

duty examination. *See* Appellee's Brief at 17-18. This argument is misplaced because Cooley was not required to anticipate Union Pacific's limitations defense and plead around it in advance. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). He was required only to allege facts that, construed in his favor, do not foreclose his tolling theory.

The absence of an allegation should not be confused with the presence of an allegation proving the opposite. It is true that the Third Amended Complaint does not mention specific actions taken on or after September 18, 2014 that were part of his fitness-for-duty examination. Without the benefit of discovery, Cooley could not have known what Union Pacific did, and when they did it. But this omission is not the equivalent of an affirmative allegation that no such actions were taken during the relevant period.

Union Pacific's argument about things not alleged in the Third Amended Complaint asks the Court to draw an inference against Cooley at the pleading stage, which is contrary to Rule 12(b)(6) standards. *See, e.g., White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306-307 (5th Cir. 2021) (all reasonable inferences must be drawn in the plaintiff's favor). Applying the proper standards and analysis leads to the conclusion that Cooley's tolling argument is not foreclosed, and his case should not have been dismissed.

11

# CONCLUSION

Because of ambiguity in the term "fitness-for-duty examination," Cooley's allegations in the Third Amended Complaint do not foreclose his tolling argument. It was therefore error for the lower court to dismiss this case based on an unpled affirmative defense. Appellant Jeffrey Todd Cooley requests an order reversing the district court's order dismissing this case.

Respectfully submitted:

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Email: don.uloth@uloth.pro
Counsel for Appellant

# CERTIFICATE OF SERVICE

I certify that on August 12, 2026, I filed an electronic copy of the foregoing document with the Clerk of the United States Court of Appeals for the Fifth Circuit using the court's CM/ECF system, which will serve all counsel of record.

/s/ Donald E. Uloth
Donald E. Uloth

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 2,429 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Donald E. Uloth
Donald E. Uloth